LYNCH, Circuit Judge.
The BIA held here that an alien, who is already under a final order of removal for committing crimes of moral turpitude, bears the burden of proving that he has met the standards under In re Pickering, 23 I. & N. Dec. 621 (BIA 2003), for vacating an order of removal presented in a belated motion and premised on the post-final-order-of-removal vacating of the underlying state court conviction. In the circumstances of this case, the BIA held that the alien had not met that burden. Because we cannot say that either the facts before it or the law compelled the BIA to reach the opposite result, we affirm the BIA and deny the petition for review.
I.
Antoni A. Rumierz, a Polish citizen who entered this country as an immigrant in 1980, was ordered removed from the United States by the BIA on August 18, 2000, on the basis that he had been convicted twice in state courts of receiving stolen property, which are crimes of moral turpitude for federal immigration purposes. See 8 U.S.C. § 1227(a)(2)(A)(ii).
Before that, in 1999, the BIA had found Rumierz removable on the same basis, but had remanded to the Immigration Judge (IJ) to determine whether Rumierz nonetheless should be granted a waiver of relief under former § 212(c) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(c) (1994) (repealed 1996). The IJ denied § 212(c) relief as a matter of discretion on December 10, 1999; this decision was affirmed in the BIA’s August 2000 order. Deportation proceedings had initially commenced in March 1994.
In its August 2000 order, the BIA expressly found that the government had met its burden to show that the two prior convictions were sufficient to establish Ru-mierz’s deportability; it also noted that the two convictions had not been vacated. There is no doubt the criminal convictions, one of which was a January 1994 Vermont conviction, were qualifying crimes of moral turpitude. Rumierz did not petition for review of the BIA’s August 2000 order, nor did he file a motion with the BIA to reopen.
In February 2001, Rumierz filed a pro se writ of habeas corpus, which was heard in the U.S. District Court for the District of New Jersey.[1] No doubt he did this because the ninety-day filing deadline to bring new evidence to the BIA under either a motion to reopen or a motion to reconsider had long since expired. 8 C.F.R. § 3.2(c)(2) (1999) (recodified at 8 C.F.R. § 1003.2(c)(2)).
Thereafter, in 2002, two years after the BIA had entered its final order of removal and the time for reopening had passed, Rumierz sought to vacate the January 1994 predicate conviction in Vermont. On *34 application by Rumierz, a Vermont court entered, on August 23, 2002, an “Agreement and Stipulation,” which struck the conviction for possession of stolen property and amended it to negligent operation of a motor vehicle. Negligent operation of a motor vehicle is not a crime of moral turpitude under the immigration laws. Rumierz brought the vacating of the conviction to the attention of the district court. The government responded with an affidavit from a Vermont Deputy State’s Attorney, which stated that Ru-mierz had petitioned for post-conviction relief on the basis of allegations of “certain errors in his earlier conviction.” The affidavit also stated that “[t]he merits of Petitioner’s claim were not addressed or adjudicated in connection with the ‘Agreement and Stipulation.’ ”
The district court on September 25, 2003, at Rumierz’s request, directed the BIA “to reconsider its [August 18, 2000] decision in light of subsequent developments, including the Agreement and Stipulation, dated August 23, 2002 from the Superior Court, Windsor County, Vermont.” The district court order did not itself vacate the order of removal or order the BIA either directly or indirectly to vacate the order of removal. It also did not hold that Rumierz had met the standard used by the BIA to determine whether to reopen proceedings.
The BIA, as instructed, reconsidered based on the record sent to it by the district court, and denied relief, saying:
Upon further consideration, the respondent’s appeal will again be dismissed. The August 23, 2002, “Agreement and Stipulation” from the Vermont court states only that [Rumierz’s] conviction for possession of stolen property “shall be stricken and amended to negligent operation of a motor vehicle.” There is nothing in the record to indicate that this conviction was stricken based on any defect in the original conviction. An affidavit from a Vermont Deputy State’s Attorney states that, “the merits of Petitioner’s claim were not addressed or adjudicated” in connection with the Agreement and Stipulation.
In [In re Pickering ], we held that where a court order quashing a conviction, and the documents supporting the request to quash, did not identify a basis for questioning the integrity of the underlying criminal proceeding or conviction, the conviction remained valid for immigration purposes. In that case, the alien’s affidavit stated that the conviction was a bar to his lawful permanent resident status in the United States.
We find that, particularly this late, in the proceedings (where the conviction in question was entered in January of 1994, and where deportation proceedings began in March of 1994), [Rumierz] must present evidence to show that the Vermont court’s action in striking the stolen property conviction was tied to a defect in that conviction, rather than related in part to immigration proceedings. Here, there is no representation in the record regarding any kind of defect in the merits of the respondent’s Vermont conviction, and, as noted above, the state’s attorney has stated that in striking the conviction, the judge did not address or adjudicate the merits of [Rumierz’s] claim. Under these circumstances, the respondent has not shown that the Vermont conviction for possession of stolen property is not still valid for immigration purposes. We therefore find that the respondent remains deportable as charged.
The BIA order had two major components. First, it utilized the substantive standard the BIA had established in In re Pickering, 23 I. & N. Dec. 621, under *35 which a vacated conviction is no longer a “conviction” within the meaning of the immigration laws only “if a court with jurisdiction vacates [the] conviction based on a defect in the underlying criminal proceedings.” [2] Id. at 624. Under Herrera-Inirio v. INS, 208 F.3d 299 (1st Cir.2000), which pre-dates and is independent of Pickering, the rule is the same:
The emphasis that Congress placed on the original admission of guilt plainly indicates that a subsequent dismissal of charges, based solely on rehabilitative goals and not on the merits of the charge or on a defect in the underlying criminal proceedings, does not vitiate that original admission.
Id. at 306. Second, the BIA held in the circumstances of this case the alien bore the burden of demonstrating that the striking of the state conviction “was tied to a defect in that conviction.”
Thereafter, Rumierz renewed his habeas petition in the U.S. District Court in New Jersey. The case was transferred to this court on petition for review under section 106(c) of the REAL ID Act of 2005, Pub.L. No. 109-13, Div. B, 119 Stat. 302, 311 (codified at 8 U.S.C. § 1252 note).
II.
Rumierz makes four arguments attacking the BIA’s conclusions. We quote from his brief:
First, the BIA incorrectly placed the burden of proving deportability on Mr. Rumierz and not on the government where he has been charged with deport-ability. Second, the stipulated order is entitled to full faith and credit by the BIA without regard to the Vermont Court’s reasons for effecting the modification or reduction.[3] Third, even if the BIA can look behind the stipulated order, the government has not met its burden of proving deportability by clear and convincing evidence or that Mr. Ru-mierz’s case runs afoul of [In re Pickering] in that no reliable evidence has been submitted showing that the criminal conviction was vacated solely due to immigration or rehabilitative reasons. Finally, as a matter of procedural due process the BIA should have terminated proceedings with prejudice after one remand to amend the [order to show cause], (citations omitted).
A. Burden of Demonstrating Predicate Conviction
The initial question presented by Rumierz’s arguments is whether the BIA’s allocation of the burden on the alien, in these circumstances, to demonstrate that the Pickering standard has been met is either contrary to the relevant statute or an impermissible construction of the statute. See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
The odd procedural posture in which this case came to the BIA — through a district court order that the BIA reconsider in light of the vacated conviction— *36 makes no difference to the standard of review we use to determine whether we can reverse the choice of the BIA to place the burden on the petitioner on these facts. Nor does it make a difference to our standard of review of the BIA’s ruling that Rumierz had not met his burden.
Rumierz argues that the BIA’s allocation of burdens is inconsistent with the statute. He says that under 8 U.S.C. §§ 1101(a)(48)(A) and 1229a(c)(3)(A), the government must always bear the burden of proof on showing a conviction of a crime of moral turpitude, regardless of whether the issue arises in the context of the alien having vacated the conviction after a final order of removal. He also argues that the placing of the burden on him is inconsistent with two Board rulings: Pickering and In re Ortiz-Herrera, A30-772-905, 2005 WL 3016102 (BIA Aug. 2, 2005) (unpublished decision). However, Ortiz-Herrera has no precedential value,[4] and Pickering does not address the issue of burdens.
The first prong of the Chevron test asks “whether Congress has directly spoken to the precise question at issue.” 467 U.S. at 842-43, 104 S.Ct. 2778. Rumierz relies heavily on the INA section defining the term “conviction”:
The term “conviction” means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
(ii) the judge has ordered some form of punishment, penalty, or restraint on the alien’s liberty to be imposed.
8 U.S.C. § 1101(a)(48)(A). This section itself does not assign burdens.
But 8 U.S.C. § 1229a provides that the burden of proof is on the Department of Homeland Security (DHS) of establishing by clear and convincing evidence that, in the case of an alien who has been lawfully admitted to the United States, the alien is deportable.
In the proceeding, the [DHS] has the burden of establishing by clear and convincing evidence that, in the case of an alien who has been admitted to the United States, the alien is deportable. No decision on deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence.
8 U.S.C. § 1229a(c)(3)(A). The BIA found, in both its August 2000 order and its February 2004 order after reconsideration, that the government had met its burden in the proceedings leading to the August 2000 removal order. Rumierz does not contest that.
Both statutes, however, are silent on who has the burden of showing the effect of convictions which are vacated or modified after final orders of removal have entered. See Pinho v. Gonzales, 432 F.3d 193, 206 (3d Cir.2005) (noting that “[n]oth-ing in the statute specifically addresses vacated convictions” and turning to a Chevron analysis). Thus, Congress has not spoken directly to the issue, and the *37 BIA’s position cannot be said to be contrary to the statute.
Turning to the second prong of the Chevron analysis, “whether the agency’s answer is based on a permissible construction of the statute,” 467 U.S. at 842-43, 104 S.Ct. 2778, a court must uphold the BIA’s interpretation of a silent or ambiguous statute so long as it is reasonable and consistent with the statute. See INS v. Cardoza-Fonseca, 480 U.S. 421, 445 n. 29, 447-48, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); Estrada-Canales v. Gonzales, 437 F.3d 208, 214-15 (1st Cir.2006). Further, as we noted in Herrera-Inirio, “[b]eeause agency officials acting in the immigration context ‘exercise especially sensitive political functions that implicate questions of foreign relations,’ deference to administrative expertise is particularly appropriate.” 208 F.3d at 304 (internal citation omitted) (quoting INS v. Abudu, 485 U.S. 94, 110, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988)).
Placing the burden on the alien in these circumstances is consistent with BIA regulations. This allocation of burdens accords with the usual BIA rules that the burden is on the alien to show that there is a reason to reopen or to reconsider the case.[5] Even if a prima facie case for relief is shown, the BIA “has discretion to deny a motion to reopen.” 8 C.F.R. § 1003.2(a); see also Maryam v. Gonzales, 421 F.3d 60, 62 (1st Cir.2005).
Most importantly, the placing of the burden on the alien in these circumstances serves the interest of finality. That interest in finality is already reflected in the statutes and the BIA’s rules, which both set time limits for motions to reopen and place the burden on the alien seeking to reopen.[6] Abudu, 485 U.S. at 107-08, 108 S.Ct. 904. As the Supreme Court has noted:
Motions for reopening of immigration proceedings are disfavored for the same reasons as are petitions for rehearing and motions for a new trial on the basis of newly discovered evidence. This is especially true in a deportation proceeding, where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States.
INS v. Doherty, 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992) (internal citation omitted) (citing Abudu, 485 U.S. at 107-08, 108 S.Ct. 904).
The placement of burdens is also consistent with an earlier BIA decision, albeit one the BIA did not cite in the opinion.[7] See In re Beckford, 22 I. & N. *38 Dec. 1216 (BIA 2000) (en banc). The BIA, in In re Beckford, held that when an alien files a motion to reopen (purporting to attack a predicate conviction underlying a removal order), the burden is on the alien to show that the conditions for reopening have been met, even though the burden had been on the government initially to show that the alien was removable. Id. at 1218. Where the motion to reopen is untimely, for example, where the state conviction is not vacated until after the time period for filing motions to reopen has expired, then the burden is also on the alien to establish that the motion presents an exceptional situation warranting further review. Id. As Beckford said:
The current posture of this case is critical to our decision. Were this case now before us on direct appeal, we might be inclined to remand for a further hearing. However, the fact that this is an untimely motion necessarily changes our point of view. A criminal defendant is initially the beneficiary of the rule that the government must prove his guilt beyond a reasonable doubt. However, once having been found guilty, the defendant bears the burden of proof if he wishes to attack that finding. Similarly, the Service initially bears the burden of proof in a removal proceeding, but once an alien is found removable (and that finding is upheld on appeal, if an appeal is taken), the burden shifts to the alien who wishes to attack that finding. We note that, even where a motion to reopen is not untimely, the motion will not be granted unless there is a reasonable likelihood of success upon reopening. This is particularly so when the motion seeking further review of the finding is untimely.
Id. (emphasis added) (internal citations omitted) (citing Taylor v. Illinois, 484 U.S. 400, 414, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988); INS v. Doherty, 502 U.S. 314, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992); Abudu, 485 U.S. 94, 108 S.Ct. 904, 99 L.Ed.2d 90).
Here, the BIA explicitly noted that the vacating of the conviction was “late in the proceedings” and that “the conviction in question was entered in January 1994, and ... the deportation proceedings began in March of 1994.” Further, the BIA noted that Rumierz could easily have sought to vacate the January 1994 Vermont conviction and have presented the vacated conviction to the BIA in the six years before the BIA’s 2000 order.[8] For this reason, as well, the BIA’s order is rational.[9]
*39 We outline several other reasons that placing the burden on Rumierz is rational. A shift of burden from the government to the individual when there is a collateral attack on a final judgment, as here, is quite common in the criminal law. For instance, the Court has placed the burden of proof on federal habeas petitioners who, under 28 U.S.C. § 2255, seek to vacate an already-imposed federal sentence on the basis that predicate state offenses had been vacated.[10] See Daniels v. United States, 532 U.S. 374, 382, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001); Custis v. United States, 511 U.S. 485, 496-97, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994); cf. Taylor, 484 U.S. at 414, 108 S.Ct. 646 (holding that there is a presumption that new evidence, discovered by criminal defendant after trial is over, would not change outcome of trial).
As to this case, in which there are concerns that the alien has not acted with due diligence, the BIA order is also rational by analogy to Johnson v. United States, 544 U.S. 295, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005), which held that the defendant’s failure to act with due diligence in overturning a predicate state conviction underlying sentencing enhancement precluded resort to a renewed limitations period under the federal habeas statute. See id. at 310-11, 125 S.Ct. 1571.
We reject the challenge to the BIA’s decision to place the burden of proof on Rumierz.
B. Whether the BIA Was Compelled to Hold that Rumierz Had Met Pickering Standard
Our standard of review of the substance of the BIA’s decision that Rumierz did not meet his burden is quite narrow. The BIA’s “decision that an alien is not eligible for admission to the United States is conclusive unless manifestly contrary to law.” 8 U.S.C. § 1252(b)(4)(C). Furthermore, the BIA’s “administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.” Id. § 1252(b)(4)(B) (emphasis added). “This standard of review as to factual questions is commonly known as the ‘substantial evidence test,’ and substantial evidence exists where the decision is ‘supported by reasonable, substantial, and probative evidence on the record considered as a whole.’ ” Estrada-Canales, 437 F.3d at 215 (quoting Katebi v. Ashcroft, 396 F.3d 463, 466 (1st Cir.2005)).
The topic of how to handle vacated state court decisions which are used as predicate convictions for purposes of removal has often come before the BIA and the reviewing courts of appeals. It is well accepted that not every vacating of a state court conviction makes the conviction invalid for purposes of immigration law. As this court held in Herrera-Inirio, 208 F.3d 299:
The emphasis that Congress placed on the original admission of guilt plainly *40 indicates that a subsequent dismissal of charges, based solely on rehabilitative goals and not on the merits of the charge or on a defect in the underlying criminal proceedings, does not vitiate that original admission.
Id. at 306; see also Renteria-Gonzalez v. INS, 322 F.3d 804, 812 (5th Cir.2002); United States v. Campbell, 167 F.3d 94, 98 (2d Cir.1999); Beltran-Leon v. INS, 134 F.3d 1379, 1380-81 (9th Cir.1998). The rule in this circuit under Herrera-Inirio exists independently of the BIA’s Pickering case.
The generic issue arises under a number of sections of the INA. See, e.g., Herrera-Inirio, 208 F.3d at 303 (dealing with challenge to conviction of predicate crime of domestic violence); see also 8 U.S.C. § 1227(a)(2)(E)(i). This case involves only removals based on the commission of multiple crimes of moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(ii).
The BIA has relevant precedent. Under the Pickering standard:
[T]here is a significant distinction between convictions vacated on the basis of a procedural or substantive defect in the underlying proceedings and those vacated because of post-conviction events, such as rehabilitation or immigration hardships. Thus, if a court with jurisdiction vacates a conviction based on a defect in the underlying criminal proceedings, the respondent no longer has a “conviction” within the meaning of [INA] section 101(a)(48)(A). If, however, a court vacates a conviction for reasons unrelated to the merits of the underlying criminal proceedings, the respondent remains “convicted” for immigration purposes.
Pickering, 23 I. & N. Dec at 624. Pickering itself did not address the burden of proof.
The Attorney General, in a 2005 opinion pursuant to 8 C.F.R. § 1003.1(h)(1)(2) (authorizing BIA certification for review by the Attorney General), emphasized that for a vacated conviction to not be a “conviction” within the meaning of the immigration laws, the relief provided by the state must “reflect a judgment about the merits of the underlying adjudication of guilt.” In re Marroquin-Garcia, 23 I. & N. Dec. 705, 713-17 (A.G.2005). In addition, the Attorney General noted:
State laws that authorize the subsequent expungement of a conviction typically do so for reasons that are entirely unrelated to the legal propriety of the underlying judgment of conviction — reasons, in other words, that are unrelated to concerns about the factual basis for, or the procedural validity of, the conviction. These state expungement laws authorize a conviction to be expunged in order to serve rehabilitative ends and without reference to the merits of the underlying adjudication of guilt. Such expunged convictions would appear, therefore, to survive as formal adjudications of guilt entered by a court.
Id. at 713 (citations omitted).
We outlined Rumierz’s four arguments earlier. They are almost entirely dependent on his argument, which we have rejected, that the burden was on the government.
Applying, as we must, the rule in Herrera-Inirio, it is clear that the mere fact that the state court vacated the conviction does not require the BIA to vacate the order of removal, contrary to Rumierz’s argument. Also applying Herrera-Inirio and Pickering, it was Rumierz’s burden to show that the vacating of the Vermont conviction was based on a procedural or substantive invalidity as defined by Pickering.
*41 Rumierz’s criticisms[11] of the BIA decision, in any event, do not convince us that the BIA was compelled to reach a different conclusion. To support his argument, Rumierz points first to the Vermont state court order (the “Agreement and Stipulation”) itself.[12]
The BIA’s inquiry started with this Vermont court order, which is consistent with how the BIA approached the issue in Pickering. As the BIA noted, all that was docketed in state court was an “Agreement and Stipulation” stating that the conviction for possession for stolen property “shall be stricken and amended to negligent operation of a motor vehicle.” On its face, the order fails to show, as required by Pickering, that the prior conviction was vacated because of “a defect in the underlying criminal proceedings.” 23 I. & N. Dec at 624. All that the state court order says is that the court had accepted an agreement of the parties to vacate the conviction. The BIA opinion, we note, did not say that it would never terminate an order of removal based on a conviction which had been vacated by stipulation. Nor did it say that the sole factor on which it found Rumierz had not met his burden was that the vacating was based on a stipulation.
To support his claim that the stipulation here was sufficient to invalidate the conviction within the meaning of the immigration laws, Rumierz points to Pinho v. Gonzales, 432 F.3d 193. Pinho does not help him.[13] The question is not whether an agreement *42 or stipulation vacating a conviction can ever serve as a basis for vacating an order of removal, but whether the BIA was compelled to accept the stipulation here. Pinko does not say that the BIA must accept every stipulation which leads to vacating a conviction, whatever the circumstances.
Rumierz argues that the record, in fact, does show that he had raised a valid claim of a defect in the underlying criminal proceedings, as required by Pickering. Rumierz points to the state attorney’s affidavit, which states that Rumierz alleged “certain errors in his earlier conviction.”[14] The BIA considered the state attorney’s affidavit, but concluded that it was insufficient to meet Rumierz’s burden of showing that the conviction was vacated based on a defect in the underlying proceedings, especially since the affidavit stated that “the merits of [Rumierz’s] claim were not addressed or adjudicated in connection with the ‘Agreement or Stipulation.’ ” The BIA concluded that “there is no representation in the record regarding any kind of defect in the merits of the respondent’s conviction” and that “[u]nder these circumstances, [Rumierz] has not shown that the Vermont conviction ... is not still valid for immigration purposes.” Again, a court does not review this conclusion de novo, but asks only whether any reasonable adjudicator would be compelled to conclude to the contrary.
Going beyond the arguments presented by Rumierz, the dissent’s position is that the BIA was compelled to conclude that the vacated conviction in this case — which had been vacated not after adjudication of the merits of Rumierz’s motion to vacate, but pursuant to an agreement and stipulation between the defendant and the state’s attorney — meets the Pickering standard, simply by dint of the fact that Rumierz had claimed “certain errors” through a motion for post-conviction relief in state court.
The BIA was not obligated, as a matter of law, to accept that the stipulation and agreement — vacating a state law conviction for unstated reasons, entered into long after the state punishment had ceased and after a final order of removal — was sufficient to render the state conviction invalid within the meaning of Pickering based on evidence that “certain errors” were alleged. There is nothing in the federal immigration laws that requires such a result.[15]
First, the BIA is not required to conclude that the mere filing of a petition for *43 post-conviction relief claiming “certain errors” which results in a stipulation means that the petitioner has raised valid claims of defects in the state criminal proceedings.
Second, under Pickering, it is not enough to show that there was an allegation of a cognizable defect in the state proceedings; instead the alien must also show that “a court with jurisdiction vacated] the conviction based on a defect in the underlying criminal proceedings.” 23 I. & N. Dec. at 624. Here, even beyond the fact that Rumierz can point to nothing more than the allegation of “certain errors,” he cannot show that the stipulation was “based on” those errors. A state’s attorney, rather than challenging the petition, may have agreed to a stipulated motion to vacate the conviction for any number of reasons other than the strength and validity of those claims.
We address another argument, which Rumierz did not make before the agency (or the district court) or to this court, and so, we hold, is precluded by the exhaustion doctrine and waived. See Boakai v. Gonzales, 447 F.3d 1, 4 (1st Cir.2006). Nonetheless, we comment on it because it is heavily relied on by the dissent. Nothing in the record of the state court proceedings that was before the BIA — the “Agreement and Stipulation” or the state attorney’s affidavit — refers to a particular state statute defining the post-conviction procedure used by Rumierz. The dissent nonetheless assumes that Rumierz used the procedure set forth in Vt. Stat. Ann. tit. 13, § 7131, and that this means the grounds stated by Rumierz for relief from the state convictions are necessarily all grounds eligible for Pickering relief. The argument is based on certain assumptions, which Rumierz could have easily supported with evidence, had the assumptions been true. But Rumierz chose not to give the BIA such evidence. By its own terms the Vermont statute, Vt. Stat. Ann. tit. 13, § 7131, only applies to “[a] prisoner who is in custody under sentence of a court and claims the right to be released” because of a defect in the conviction. Id. Rumierz was not in custody in Vermont and had served his time.[16] The fact that Rumierz may have used a particular post-conviction relief statute does not mean that the BIA was required to hold that Rumierz had, in fact, raised valid claims of defects in the underlying criminal proceedings or that the state’s attorney agreed to vacate the conviction because of the strength or validity of those claims.
III.

Remaining Claims

Rumierz raises a number of other claims which were never raised to the BIA *44 and are barred by the exhaustion doctrine. Rumierz argues the BIA was obligated to tell him he was eligible for naturalization and so the order of removal should be vacated. Even if the claim had been exhausted, Rumierz was not eligible because he was already in deportation proceedings and so was precluded from naturalization. 8 U.S.C. § 1429 (“[N]o application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding----”). As the DHS notes, there is no inequity. Rumierz entered the United States as an immigrant in 1980; he had a number of years before the start of his deportation proceedings to seek naturalization but never once did so.
Rumierz also argues that the IJ who initially heard his case was biased. The claim is defaulted because it was never presented to the BIA. We lack jurisdiction. See Ishak v. Gonzales, 422 F.3d 22, 32 (1st Cir.2005).
Rumierz also argues that because he has spent the last decade in DHS detention, as a general equitable matter he should be released now and permitted to remain in the country. For any number of doctrinal reasons, the argument is not cognizable, but a few words are in order.
At base Rumierz’s claim is that when the alien has committed, as he has, more than two crimes involving moral turpitude, all of these crimes should be charged by the DHS in the initial deportation hearings. Here, part of the reason for the ten years of detention is that the government initially relied on a 1989 Massachusetts conviction for breaking and entering (as well as the Vermont conviction) and the IJ found Rumierz deportable. While that de-cisión was on appeal to the BIA, Rumierz succeeded in vacating the Massachusetts conviction. The BIA permitted the DHS, on remand to the IJ, to add a different Massachusetts conviction in 1995 for receiving stolen property. The IJ again found him deportable in 1996.[17]
Rumierz allowed the various proceedings to run their course and only after the August 2000 BIA final order of removal did he seek to vacate his Vermont conviction in 2002. The delay is entirely caused by Rumierz. His case has been ably handled by his counsel. There is, now, no basis for him to continue to avoid removal.
We deny the petition for review.

. According to the government, Rumierz initially filed his habeas petition in Rhode Island, but the petition was transferred to the U.S. District Court in New Jersey.

. In Pickering's actual case, the Sixth Circuit affirmed the BIA's rule about vacated convictions, but reversed the BIA’s order of removal on the grounds that the government had not met its burden under the specific facts of that case. Pickering v. Gonzales, 454 F.3d 525, 2006 WL 1976043 (6th Cir. July 17, 2006). The dicta in Pickering that the court would have come to the same result had the burden been on the defendant is immaterial, as the case is factually distinguishable from this case.

. The second argument has already been rejected by Herrera-Inirio, 208 F.3d at 307 (holding that federal definition of conviction under the immigration laws "does not infract applicable principles of full faith and credit”).

. Ortiz-Herrera is also plainly distinguishable. The BIA there found that where a predicate conviction was vacated after removal proceedings had begun, but before a final order of removal has been issued, the government "retain[ed] the burden of going forward to establish removability” and of establishing that the conviction was not vacated due to a defect in the underlying proceedings. Ortiz-Herrera, 2005 WL 3016102. Here, by contrast, Rumierz’s conviction was vacated by the Vermont court two years after the final order of removability had entered.

. Under the BIA regulations, a petitioner seeking to reopen proceedings must "state the new facts that will be proven at a hearing to be held if the motion is granted” and demonstrate "that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing.” 8 C.F.R. § 1003.2(c)(1). The BIA may deny a motion to reopen on the grounds that "the movant has not established a prima facie case for the underlying substantive relief sought.” Abudu, 485 U.S. at 104, 108 S.Ct. 904.

. The BIA was entitled to consider the time limits under its rules for seeking to vacate final orders of removal. "[A] party may file only one motion to reopen deportation or exclusion proceedings (whether before the [BIA] or the [IJ]),” and the motion to reopen "must be filed no later than 90 days after the date on which the final administrative decision was rendered.” 8 C.F.R. § 1003.2(c)(2).

.There is no requirement that the BIA, or even a court, explain its reasoning on a motion to reopen or reconsider. See Lasprilla v. Ashcroft, 365 F.3d 98, 100 (1st Cir.2004) ("We have found nothing in the regulations that requires the BIA to explain its reasons when deciding a motion to reconsider.”); FDIC v. Ogden Corp., 202 F.3d 454, 460 (1st Cir.2000) ("Although a lower court's elucidation of its reasoning invariably eases the ap *38 pellate task, motions often are decided summarily. ... [W]e are aware of no authority that would allow us automatically to vary the standard of review depending on whether a district court has taken the time to explain its rationale.”). In any event, whether or not the BIA relied on Beckford is not the point. Its placement of the burdens is rational.
Further, no court has ruled against this allocation of burdens. In Cruz-Garza v. Ashcroft, 396 F.3d 1125 (10th Cir.2005), the court noted its view that where a state court conviction had been modified, the burden was on the government of showing the necessary predicate conviction for removal purposes (that is, an aggravated felony, under 8 U.S.C. § 1227(a)(2)(A)(iii)). See id. at 1130. But the court did so where the conviction was apparently vacated before there was a final order of removal. See id. at 1127-28.

. The fact that Rumierz was proceeding pro se before the BIA by this time makes no difference. The Vermont conviction had been entered in 1994. Rumierz had counsel from at least June 1995, when his case was first heard by the IJ, until sometime in 1999. This gave him nearly four years during which he was represented by counsel to challenge the Vermont conviction. Indeed, during this time period — in September 1995 — Rumierz was able to obtain a state vacatur of another predicate conviction, from Massachusetts (which the DHS then substituted with a different Massachusetts predicate conviction).

. The dissent incorrectly says that the only argument the government made in its initial *39 brief supporting the BIA’s allocation of the burden was that the alien was in a better position to establish the circumstances of the vacatur; the dissent concludes that all other arguments were waived. That is neither accurate nor relevant. Our obligation is to review the BIA's decision itself.

. Another analogy is to United States v. Hartsock, 347 F.3d 1 (1st Cir.2003), which held that where, for purposes of a federal statute criminalizing the possession of firearms by those convicted of domestic violence offenses, 18 U.S.C. § 922(g)(9), the statute provided an affirmative defense that a prior conviction would not be considered if there was an unknowing waiver of counsel, the burden of proof for the affirmative defense would be placed on the defendant. See Hartsock, 347 F.3d at 9.

. Rumierz, relying on In re Cota-Vargas, 23 I. & N. Dec. 849 (BIA 2005), argues to us (but had not argued to the BIA) that "the BIA should be precluded from even inquiring into the reasons for the modification of the court’s order in this case.” This is flatly contrary to both Pickering and Herrera-Inirio, and mixes apples and oranges. The question in Cota-Vargas was whether a state sentencing modification nunc pro tunc meant that the "term of imprisonment ” within the meaning of 8 U.S.C. § 1101(a)(48)(B) was now less than that required to allow a conviction to constitute a predicate offense. See 23 I. & N. Dec. at 852. Our issue is different, whether a "conviction ” exists within the meaning of 8 U.S.C. § 1101(a)(48)(A). Indeed, the BIA in Cota-Vargas distinguished Pickering on the grounds that it involved subparagraph (A) rather than (B). See 23 I. & N. Dec. at 851— 52. Further, it is well settled that "a state court expungement of a conviction is qualitatively different from a state court order to classify an offense or modify a sentence.” Garcia-Lopez v. Ashcroft, 334 F.3d 840, 846 (9th Cir.2003).

. Rumierz raises two other arguments for the first time in his reply brief that were not raised to the BIA: First he argues that the BIA was required to follow a lock-step analysis, where it looks first to the order vacating the conviction and, if the order is silent, to the record of post-conviction relief, and if there was any claim of error made, it must treat the conviction as vacated for immigration law purposes. Second, Rumierz argues that the BIA could not review new evidence itself, but was required to remand to the IJ to hear evidence and to engage in fact-finding as to his reasons for seeking reversal. Both arguments are barred by exhaustion doctrine, and are waived in this court. See Boakai v. Gonzales, 447 F.3d 1, 4-5 (1st Cir.2006); Diva’s Inc. v. City of Bangor, 411 F.3d 30, 39 (1st Cir.2005). Further, for the BIA to remand the matter to the IJ would have been fruitless. There was no dispute before the BIA as to the content of the state court record, and Ru-mierz already had ample opportunity to provide the exact reasons he gave to the Vermont court for vacating the conviction and had utterly failed to do so.

. Pinho is legally and factually distinguishable on several other fronts. Importantly, the Pinho court, relying on a full record of the state court proceedings, including hearing transcripts, 432 F.3d at 196-97, expressly relied on the fact that Pinho had raised a valid claim of ineffective assistance of counsel, a clear "defect in the underlying criminal proceedings.” Id. at 211. Here, by contrast, the BIA had a sparse record consisting only of the state court order and an affidavit from the state attorney, neither of which demonstrate that Rumierz had raised a valid claim of any defect. Also, in Pinho there was no statement from a state's attorney that the merits of the petitioner's claim had not been addressed or *42 adjudicated. Furthermore, the alien in Pinho had vacated his state convictions well before the INS had considered the alien's application for adjustment of status (the government in Pinho argued that his state conviction had made the alien ineligible for adjustment of status). Id. at 198. Here, the conviction was vacated after a final order of removal had entered.

. This case does not raise the Shepard-type sentencing guidelines issue of what evidence the BIA may look at in determining whether a vacated conviction remains valid for immigration law purposes. See Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). The BIA and the courts are free to consider the reasons stated in the stipulated order to amend the state court conviction. See, e.g., Ali v. Ashcroft, 395 F.3d 722, 729 (7th Cir.2005). And Rumierz does not challenge the BIA's consideration of the state attorney’s affidavit; indeed, he relies on it. In the absence of a statutory directive, such as that which exists under the U.S. Sentencing Guidelines, it seems to us that the issue of what the BIA considers, and in what order, is one for the BIA in the first instance, to be tested, if necessary, only under Chevron.

. If Rumierz's position were correct, all it would take for an alien to avoid or delay deportation on the basis of old predicate state convictions is to wait until the final order of removal had been entered, make invalid claims for post-conviction relief in state court, find a state attorney who has more pressing matters than defending an old conviction, *43 have the conviction vacated by agreement without having the merits of his claim addressed or adjudicated, and return to the BIA to reopen the case claiming that he had alleged “certain errors,” without describing what those errors actually were or providing a record of the state proceedings. This would either force the government to find a new ground for deportation and start the proceedings over again, or, even worse, allow the alien (who had already been found deportable for having two or more convictions for crimes of moral turpitude) to remain in the country, even though the alien had never demonstrated to anyone that there was even the suggestion of a defect in the state criminal proceedings. The immigration system was simply not designed to allow this sort of gamesmanship by criminal aliens.

. The dissent asserts that Vermont courts have broadly interpreted its post-conviction relief statute to cover Rumierz's situation. Whether this is true or not, these were not arguments raised by Rumierz before the BIA or before us. The BIA was not required to find a state statute that Rumierz may have used to challenge his state conviction, and to conduct its own research into how Vermont courts interpret that statute.

. Under a 1998 decision of this court, Goncalves v. Reno, 144 F.3d 110 (1st Cir.1998), the BIA gave Rumierz an opportunity to have his claim for § 212(c) relief adjudicated. That claim was denied by the IJ on December 10, 1999, and the denial was affirmed by the BIA in its August 18, 2000 order.