# United States Court of Appeals
## For the First Circuit

No. 12-1269

JOSE DEMETRIO SOTO-HERNANDEZ,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE

BOARD OF IMMIGRATION APPEALS

Before

Howard, Selya and Thompson,
Circuit Judges.

Robert D. Watt, Jr. for petitioner.
James E. Grimes, Senior Litigation Counsel, Office of
Immigration Litigation, Civil Division, Department of Justice, with
whom Stuart F. Delery, Acting Assistant Attorney General, and Linda
S. Wernery, Assistant Director, were on brief, for respondent.

August 30, 2013

**HOWARD, Circuit Judge.** The petitioner seeks review of a decision by the Board of Immigration Appeals (BIA) holding that a prior conviction for the unlawful transfer of firearms rendered him statutorily ineligible for cancellation of removal. The petitioner argues that the BIA committed legal error in determining that his one-time sale of a single firearm constituted "trafficking in firearms" under 8 U.S.C. § 1101(a)(43)(C). Because the BIA's determination involved a permissible construction of the Immigration and Naturalization Act (INA), we deny the petition for review.

## I. Facts and Background

Jose Demetrio Soto-Hernandez (Soto) is a native and citizen of the Dominican Republic. He entered the United States lawfully as a permanent resident in 1996. In June of 2003, Soto was convicted of the assault and battery of a former girlfriend in violation of Rhode Island General Laws § 11-5-3 and § 12-29-5. Two years later, in June of 2005, the Department of Homeland Security (DHS) initiated removal proceedings against Soto pursuant to 8 U.S.C. § 1227(a)(2)(E)(i) as an alien convicted of a crime of domestic violence. At his removal hearings, Soto conceded his removability, but filed an application for cancellation of removal under 8 U.S.C. § 1229b.

Pursuant to 8 U.S.C. § 1229b, an alien who is deportable from the United States may be considered for cancellation of

removal provided that he meets three criteria. First, the applicant must have been admitted as a lawful permanent resident for at least five years; second, the applicant must have resided in the United States continuously for at least seven years; third, the applicant must never have been convicted of an aggravated felony. 8 U.S.C. § 1229b(a). As defined in 8 U.S.C. § 1101(a)(43)(C), an aggravated felony includes "illicit trafficking in firearms." Id. In June of 2005, around the same time that DHS instituted the removal proceedings, Soto was convicted of unlawfully delivering a .45 caliber semi-automatic pistol to a purchaser "without complying with" the Rhode Island General Laws. Specifically, Soto had violated the state prohibition on the delivery of a pistol or revolver less than seven days following an application for purchase, see R.I.G.L. § 11-47-35, as well as the requirement that pistols be delivered unloaded, securely wrapped, and with the bill of sale enclosed, see R.I.G.L. § 11-47-26. He was sentenced to two concurrent, suspended sentences of three years' imprisonment. The Immigration Judge (IJ) found that Soto's conviction satisfied the definition of an aggravated felony under 8 U.S.C. § 1101(a)(43)(C) and pretermitted Soto's application for cancellation of removal.

Soto appealed the IJ's determination to the BIA, arguing that his conduct could not constitute "illicit trafficking" because it did not "rise to the level of his being in the business or a merchant in the trading or dealing of firearms." The BIA

-3-

acknowledged that 8 U.S.C. § 1101(a)(43)(C) does not define "trafficking" with regard to firearms. It noted, however, that Matter of Davis, 20 I. & N. Dec. 536 (BIA 1992), an earlier case that addressed the same term in a consecutive provision of the INA dealing with controlled substances, 8 U.S.C. § 1101(a)(43)(B), had construed "traffic" pursuant to Black's Law Dictionary as "commerce; trade; sale or exchange of merchandise, bills, money, and the like" and trafficking as "trading or dealing in certain goods." Id. at 541. The BIA had consequently concluded in Davis that the "essen[ce]" of trafficking was its "business or merchant nature, the trading or dealing in certain goods, although minimal degree of involvement may be sufficient . . . ." Id. (emphasis added). On this basis, the BIA held that Soto's delivery of a firearm to a purchaser fit under the definition of trafficking and affirmed the IJ's determination that Soto's conviction constituted an aggravated felony.

Soto now petitions for review.

## II. Discussion

We review the BIA's conclusions of law de novo. Vasquez v. Holder, 635 F.3d 563, 565 (1st Cir. 2011). Where the BIA's legal conclusions concern statutes and regulations related to immigration matters, however, we grant the BIA's interpretations Chevron deference. Mejia-Orellana v. Gonzales, 502 F.3d 13, 16 (1st Cir. 2007); see also Negusie v. Holder, 555 U.S. 511, 516

-4-

(2009) ("Consistent with the rule in [Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984)], the BIA is entitled to deference in interpreting ambiguous provisions of the INA."). When a statute "is silent or ambiguous with respect to the specific issue" before the court, we consequently ask only "whether the agency's answer is based on a permissible construction of the statute." I.N.S. v. Aguirre-Aguirre, 526 U.S. 415, 424 (1999) (quoting Chevron, 467 U.S. at 843) (internal quotation marks omitted). We "must uphold the BIA's interpretation . . . so long as it is reasonable and consistent with the statute." Rumierz v. Gonzales, 456 F.3d 31, 37 (1st Cir. 2006).

## A. "Trafficking" in Firearms

Under 8 U.S.C. § 1229b(a), an applicant who seeks cancellation of removal must demonstrate that he has "not been convicted of any aggravated felony." Id.; see also 8 U.S.C. § 1229a(c)(4)(A)(i) (clarifying that an alien seeking protection from removal "has the burden of proof to establish that the alien . . . satisfies the applicable eligibility requirements"). An "aggravated felony" is defined in 8 U.S.C. § 1101(a)(43) as including the "illicit trafficking in firearms or destructive devices." Id. As the BIA observed, the statutory scheme leaves the term "trafficking" undefined. See Kuhali v. Reno, 266 F.3d 93, 108 (2d Cir. 2001) (noting that "the INA does not define the term "trafficking" in § 101(a)(43)(C)"); accord Joseph v. Att'y Gen. of

-5-

U.S., 465 F.3d 123, 128 (3d Cir. 2006). Faced with this ambiguity, the BIA in this case construed "trafficking in firearms" as any activity involving the commercial exchange of a firearm, including a single past transaction.

The BIA's construction is a permissible interpretation of 8 U.S.C. § 1101(a)(43)(C). Where Congress fails to specify the meaning of a statutory term, "courts typically read statutory terms to convey their ordinary meaning, including as reflected in dictionary definitions." United States v. Knott, 256 F.3d 20, 28 (1st Cir. 2001); see also S.E.C. v. Tambone, 597 F.3d 436, 443 (1st Cir. 2010) (en banc) ("One reference point for determining the ordinary meaning of a word is its accepted dictionary definition."). In construing "trafficking" as an activity defined purely by its "business or merchant nature," the BIA relied on the term's official definition in Black's Law Dictionary as "commerce; trade; sale or exchange of merchandise, bills, money, and the like." Davis, 20 I. & N. Dec. at 541 (quoting Black's Law Dictionary 1240 (5th ed. 1979)). Although Soto urges that the "plain language definition" of commerce requires some large-scale business activity, we cannot hold that the BIA's interpretation of commerce as focusing primarily on some element of financial exchange is impermissible. Indeed, the BIA's emphasis on the "merchant nature" of Soto's conduct conforms with the definitions of "trafficking" previously espoused by the Supreme Court and this

-6-

court.  See, e.g., Lopez v. Gonzales, 549 U.S. 47, 53 (2006) ("[O]rdinarily 'trafficking' means some sort of commercial dealing."); Urena-Ramirez v. Ashcroft, 341 F.3d 51, 57 (1st Cir. 2003) ("Courts define 'illicit trafficking' as illegally 'trading, selling or dealing' in specified goods." (quoting Kuhali, 266 F.3d at 107)); Bruno v. United States, 289 F. 649, 655 (1st Cir. 1923) ("Traffic . . . means to pass goods or commodities from one person to another for an equivalent in goods or money."  (internal quotation marks and citation omitted)).

Furthermore, the BIA's definition conforms to the agency's own precedent in interpreting the INA.  "The normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning."  Sorenson v. Sec'y of Treasury of U.S., 475 U.S. 851, 860 (1986) (internal quotation marks and citations omitted); see also United States v. Jimenez, 507 F.3d 13, 19 (1st Cir. 2007) (finding that use of an "identical" phrase in consecutive subsections "strongly intimat[es] that it has the same meaning in both").  In defining "trafficking in firearms" under § 1101(a)(43)(C), the BIA relied on its established interpretation of the same term in a neighboring provision of the INA discussing "trafficking in a controlled substance."  See Davis, 20 I. & N. Dec. at 541; 8 U.S.C. § 1101(a)(43)(B).  The BIA also emphasized its longstanding precedent that a single conviction for the sale of narcotics

qualifies an alien as a drug "trafficker" under the statute. See Matter of Roberts, 20 I. & N. Dec. 294, 301 (BIA 1991) (finding that one conviction for sale of cocaine brought the respondent within the definition of a drug trafficker); Matter of P-, 5 I. & N. Dec. 190, 191-92 (BIA 1953) (finding that an applicant's "first and only" attempt to sell drugs qualified him as a trafficker). The BIA's consistent interpretation of "trafficking" in § 1101(a)(43)(B) as a term that encompasses even isolated commercial dealings provides a strong foundation for the BIA's adoption of a similar definition of "trafficking" in § 1101(a)(43)(C).

We do not dispute that "trafficking" may reasonably be read to imply some element of large-scale commercial dealing. This narrower reading, however, is not the only reasonable one. Under Chevron review, we hold that the BIA's definition of "trafficking in firearms" in 8 U.S.C. § 1101(a)(43)(C) as encompassing any commercial exchange, in accordance with both dictionary definitions and the BIA's own precedent in a neighboring provision of the INA, is "reasonable and consistent with the statute." Rumierz, 456 F.3d at 37.

## B. Trafficking in "Firearms"

At oral argument, Soto's counsel also urged that § 1101(a)(43)(C)'s explicit reference to "trafficking in firearms," in the plural, precludes the BIA from applying the term to a one-

-8-

time delivery of a single firearm.  Because Soto failed to raise this argument before either the IJ or the BIA, it is waived on appeal.  See Molina De Massenet v. Gonzales, 485 F.3d 661, 664 (1st Cir. 2007) ("[A]rguments not raised before the BIA are waived due to a failure to exhaust administrative remedies.").[1]

Even were we to confront the issue on the merits, Soto's argument is flawed on its face.  "In determining the meaning of any Act of Congress, unless the context indicates otherwise . . . words importing the plural include the singular."  1 U.S.C. § 1.  While this interpretive presumption may be rebutted where its application renders a statute illogical or otherwise impracticable, see, e.g., United States v. Fior D'Italia, Inc., 536 U.S. 238, 263-64 (2002), the reference to "trafficking" in § 1101(a)(43)(C) does not present such a case.  Cf. United States v. Foote, 413 F.3d 1240, 1246 (10th Cir. 2005) (applying 1 U.S.C. § 1 to hold that "trafficking in a single counterfeit good constitutes trafficking in 'goods'" under the Counterfeit Trademark Act).  Congress's reference to "firearms"

---

[1] Soto's briefs to the IJ and to the BIA argue only, and far more vaguely, that "the conduct of the Respondent does not rise to the level of his being in the business or a merchant in the trading or dealing of firearms."  At Soto's immigration hearing, Soto's counsel did not raise the number of weapons sold, arguing instead that "trafficking at least as it relates to the weapon would have to constitute something more than a single sale" (emphasis added).  To the extent that these statements may have implicitly sought to incorporate Soto's second argument, they were "insufficient to put the agency on notice of [Soto's] claim."  See Molina De Massenet, 485 F.3d at 664 n.2.  Indeed, the BIA explicitly identified Soto's only argument on appeal as the claim that his conviction "was not an aggravating felony because he did not 'traffic' firearms."

in the plural in § 1101(a)(43)(C) does not, in itself, render the BIA's construction of the provision as encompassing the sale of a single firearm impermissible.

## C.  Rule of Lenity

Finally, Soto argues that the rule of lenity requires this court to interpret immigration statutes in the light most favorable to the alien facing deportation. Because § 1101(a)(43)(C) leaves the term "illicit trafficking" undefined, Soto claims that the term is ambiguous and should be read to exclude his one-time sale.

As the government notes, we have consistently limited the application of the rule of lenity to criminal statutes. See, e.g., Lawson v. FMR LLC, 670 F.3d 61, 70 n.12 (1st Cir. 2012) (noting that "the rule of lenity . . . is used only in criminal cases"); Lopes v. Keisler, 505 F.3d 58, 63 n.2 (1st Cir. 2007) (finding the rule of lenity "irrelevant" where the "statutes at issue are immigration statutes").  The Supreme Court's own record of applying the principle to immigration statutes, however, is more ambiguous. On occasion, the Court has agreed that the rule of lenity is appropriate only where a court is interpreting a criminal statute. See, e.g., Carachuri-Rosendo v. Holder, 130 S. Ct. 2577, 2589 (2010) (applying the rule in an immigration case where "the critical language appears in a criminal statute"); Leocal v. Ashcroft, 543 U.S. 1, 12 (2004) (applying the rule "[a]lthough here

we deal with § 16 in the deportation context" because "§ 16 is a criminal statute").  Yet the Court has also repeatedly suggested that the rule of lenity may apply to immigration statutes themselves, including 8 U.S.C. § 1101(a).  See, e.g., Kawashima v. Holder, 132 S. Ct. 1166, 1175-76 (2012) (assuming that the rule of lenity could apply to § 1101(a)(45)(M), though finding the provision sufficiently clear to preclude it); I.N.S. v. St. Cyr, 533 U.S. 289, 320 (2001) (noting "the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien"); I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987) (same).

Ultimately, this case does not require us to confront whether (and if so, when) the rule of lenity applies in the immigration context, because Soto's argument would have us stretch the principle beyond any reasonable application.  As the Supreme Court has clarified, "[b]ecause the meaning of language is inherently contextual, [courts should not] deem a statute 'ambiguous' for purposes of lenity merely because it [i]s possible to articulate a construction more narrow than that urged by the Government."  Moskal v. United States, 498 U.S. 103, 108 (1990).  "The rule of lenity . . . is not applicable unless there is a grievous ambiguity or uncertainty in the language and structure of the Act, such that even after a court has seize[d] every thing from which aid can be derived, it is still left with an ambiguous

statute."  <u>Chapman</u> v. <u>United States</u>, 500 U.S. 453, 463 (1991) (internal quotation marks and citations omitted).  The definition of the term "trafficking" in § 1101(a)(43)(C) is a legal question that may satisfactorily be resolved through ordinary principles of statutory interpretation, including reference to dictionaries and neighboring statutory provisions.  The BIA made use of these precise principles in reaching its definition of trafficking as an activity defined by its "business or merchant nature."  Especially in light of the deference owed to the BIA's constructions of the INA, the rule of lenity cannot apply to contravene the BIA's reasonable interpretation in this case.

### III.  Conclusion

For the foregoing reasons, the petition for review is **denied**.