# In Re Oscar COTA-Vargas, Respondent

File A37 803 631 - San Diego

*Decided November 18, 2005*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A trial court's decision to modify or reduce an alien's criminal sentence nunc pro tunc is entitled to full faith and credit by the Immigration Judges and the Board of Immigration Appeals, and such a modified or reduced sentence is recognized as valid for purposes of the immigration law without regard to the trial court's reasons for effecting the modification or reduction. *Matter of Song*, 23 I&N Dec. 173 (BIA 2001), clarified; *Matter of Pickering*, 23 I&N Dec. 621 (BIA 2003), distinguished.

FOR RESPONDENT: James R. Patterson, Esquire, San Diego, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Michael P. Rummel, Assistant Chief Counsel

BEFORE: Board Panel:  COLE and FILPPU, Board Members.  Dissenting Opinion: PAULEY, Board Member.

COLE, Board Member:

The respondent appeals from an Immigration Judge's March 19, 2004, decision denying his motion to terminate the removal proceedings and ordering him removed from the United States as an alien convicted of an aggravated felony. The appeal will be sustained and the removal proceedings will be terminated.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico and a lawful permanent resident of the United States. On August 8, 2001, he was convicted in the Superior Court of San Diego County, California, of the offense of receiving stolen property in violation of section 496(a) of the California Penal Code. In an order dated December 20, 2001, he was sentenced to 3 years of formal

probation and a 365-day term of probationary detention in county jail.[1]  On the basis of this conviction, the Department of Homeland Security (the "DHS," formerly the Immigration and Naturalization Service), initiated removal proceedings, charging the respondent with deportability under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2000), as an alien convicted of an aggravated felony, to wit, a "theft offense (including receipt of stolen property) . . . for which the term of imprisonment [was] at least one year."  Section 101(a)(43)(G) of the Act, 8 U.S.C. § 1101(a)(43)(G) (2000).

In May 2003, the respondent filed a motion with the San Diego Superior Court requesting reduction or elimination of the 365-day jail sentence that had been imposed as a condition of his probation.  In making this request, the respondent made the following declaration through counsel:

> This relief is sought so that Mr. Cota can seek a waiver of deportation from the Immigration and Naturalization Service.  Cota is a long-time lawful resident alien. . . . [Mr. Cota's immigration attorney] has advised defense counsel that Cota may be eligible for a waiver of deportation if the stayed custody in this case is reduced to 364 days or less.  For I.N.S. purposes, it apparently is irrelevant whether the imposed custody is stayed or actually served. What *is* important is whether the term imposed is *less than* 365 days.

The respondent did not, and does not now, allege that the original 365-day sentence was substantively unlawful or procedurally defective.

On June 3, 2003, the Superior Court accommodated the respondent's request and, without comment, reduced his period of probationary detention from 365 days to 240 days, nunc pro tunc to December 20, 2001, the date of his original sentencing.  Based on this modification of his sentence, the respondent filed a motion to terminate the removal proceedings, in which he argued, by reference to our decision in *Matter of Song*, 23 I&N Dec. 173 (BIA 2001), that he was not deportable as an alien convicted of an aggravated felony, because his receipt of stolen property offense was no longer one "for which the term of imprisonment [was] at least one year" within the meaning of section 101(a)(43)(G) of the Act.

The Immigration Judge denied the motion, concluding that our subsequent precedent in *Matter of Pickering*, 23 I&N Dec. 621 (BIA 2003), had materially modified *Matter of Song* as it related to sentence modifications undertaken solely to affect the immigration consequences of the underlying conviction.

---

[1] This period of probationary detention was stayed, subject to the respondent's completion of 20 days of work in a Public Service Program.

The respondent appeals, arguing that *Matter of Pickering* is inapposite in the sentence modification context and that a modified criminal sentence must be given effect in immigration proceedings, regardless of the reasons for the modification.

## II. ISSUE

The respondent's appeal presents the question whether the California trial court's order reducing his sentence from 365 days to 240 days, nunc pro tunc, precludes the underlying conviction for receipt of stolen property from qualifying as an aggravated felony conviction, where the evidence reflects that the sentence was reduced solely for the purpose of affecting the immigration consequences of the conviction, and not to correct any substantive or procedural defect in the original judgment.

## III. ANALYSIS

In *Matter of Pickering*, *supra*, we held that a criminal conviction that was vacated for reasons solely related to rehabilitation or immigration hardships would continue to operate as a "conviction" within the meaning of section 101(a)(48)(A) of the Act, 8 U.S.C. § 1101(a)(48)(A) (2000). Section 101(a)(48)(A) provides as follows:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where —
>> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

Although we acknowledged in *Matter of Pickering*, *supra*, at 622, that the language of section 101(a)(48)(A) did not "directly address 'quashing' of convictions," that language did at least reflect a clear desire on the part of Congress to extend the meaning of the term "conviction" to encompass many judgments that would not otherwise be considered valid convictions under the law of the rendering jurisdiction because of rehabilitative or other policy considerations. In light of the language and legislative purpose of the "conviction" definition and a series of decisions of the Federal courts of appeals applying that definition in analogous circumstances, we concluded in *Pickering* that "there is a significant distinction between convictions vacated on the basis of a procedural or substantive defect in the underlying proceedings and those vacated because of post-conviction events, such as rehabilitation or immigration hardships." *Id*. at 624.

While the language and purpose of section 101(a)(48)(A) of the Act provided support for the interpretive approach we adopted in *Pickering* as it related to the existence of a "conviction," the Immigration Judge's application of the *Pickering* rationale to sentence modifications has no discernible basis in the language of the Act. Section 101(a)(48)(B) of the Act provides as follows:

> Any reference to a term of imprisonment of a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part.

This language plainly instructs us to disregard the term of imprisonment that was actually imposed upon an alien in favor of the term of imprisonment that was ordered, but not necessarily imposed, by the trial court. *Matter of Batista-Hernandez*, 21 I&N Dec. 955 (BIA 1997); *Matter of S-S-*, 21 I&N Dec. 900 (BIA 1997). However, we see nothing in the language or stated purpose of section 101(a)(48)(B) that would authorize us to equate a sentence that has been modified or vacated by a court ab initio with one that has merely been suspended. Indeed, the importance of this distinction was implicitly acknowledged by our precedent decision in *Matter of Song*, *supra*, which was issued well after the promulgation of section 101(a)(48)(B) and which gave effect to a sentence modification under circumstances similar to those presented here. *See also Garcia-Lopez v. Ashcroft*, 334 F.3d 840, 846 (9th Cir. 2003) (citing *Matter of Song* with approval).

The dissent advances a number of cogent *policy* reasons for refusing to countenance certain sentencing modifications in the immigration context, but we cannot advance policy goals that are not moored to the language of the Act. If it is the will of Congress that modified sentences should be given no effect for immigration purposes, Congress can amend the statute to so provide. But we should not force section 101(a)(48)(B) of the Act to serve a purpose that cannot be fairly reconciled with its language.

Accordingly, in the absence of a congressional directive to the contrary, we will follow *Matter of Song*, *supra*, and give full and faith and credit to the decision of California Superior Court modifying the respondent's sentence, nunc pro tunc, from 365 days to 240 days. Because the respondent does not presently stand convicted of an offense for which the term of imprisonment was at least 1 year, his offense is not an aggravated felony.[2] *Cf. Matter of Batista-Hernandez*, *supra*, at 963. No other charges of deportability are

---

[2] In view of our finding that the respondent's sentence was for less than a year, it is unnecessary for us to reach the question whether the record meets the tests set out in *Penuliar v. Ashcroft*, 395 F.3d 1037 (9th Cir. 2005), for determining whether this California conviction has been shown to be for a "theft" offense.

currently pending against the respondent.  Therefore, the respondent's appeal will be sustained, and the removal proceedings will be terminated.

**ORDER:**  The appeal is sustained.

**FURTHER ORDER:**  The removal proceedings are terminated.

*DISSENTING OPINION*:  Roger A. Pauley, Board Member

I respectfully dissent.

## I.  BACKGROUND

The respondent in this matter was lawfully convicted in California of the offense of receipt of stolen property and was duly sentenced to a 365-day jail term by the trial court.  Less than 2 months after the initiation of these removal proceedings, however, the respondent requested that the trial court modify his sentence, nunc pro tunc, solely for the purpose of allowing him to escape the immigration consequences of his conviction. The trial court granted the respondent's request without comment, and the Immigration Judge concluded, with ample justification, that such State action, undertaken solely for the purpose of undermining enforcement of the Federal immigration laws, cannot be given effect in removal proceedings without compromising the integrity of the Immigration and Nationality Act.

The majority has arrived at a different conclusion based on its seriously misguided belief that the Immigration Judge's decision was based on "policy goals that are not moored to the language of the Act." *Matter of Cota*, 23 I&N Dec. 849, 852 (BIA 2005).  On the contrary, I conclude that the Immigration Judge's decision was bottomed on—and compelled by—the Attorney General's responsibility, delegated to the Immigration Judges and the Board of Immigration Appeals, to implement the Immigration and Nationality Act as Congress intends.

## II.  ANALYSIS

In *Matter of Pickering*, 23 I&N Dec. 621 (BIA 2003), we dealt with a situation in which a court vacated an alien's controlled substances conviction pursuant to a motion in which the alien requested the vacatur for reasons solely related to the conviction's adverse effect on his eligibility for relief from removal. Citing several decisions of the Federal courts of appeals reaching like conclusions, we held that a conviction vacated, not on the merits but solely to achieve an immigration result, remained a "conviction" under section 101(a)(48)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(48)(A) (2000), despite its vacatur.  Underlying the *Pickering*

decision is the recognition that immigration enforcement is an area of Federal responsibility, in which Congress has sought to achieve consistency through the enactment of uniform criteria for removal (and relief from removal) that often necessitate an inquiry as to whether an alien has been convicted of a particular type of offense. To permit the courts, whether State or Federal, to affect the immigration consequences of a conviction by vacating it, where such action is done purely and entirely for the purpose of avoiding those consequences, would undermine the intent of Congress.

The Immigration Judge concluded that the rationale of *Matter of Pickering* should apply to sentence modifications, as well as to vacated convictions. I agree. Had the respondent's motion sought the vacatur of his conviction rather than a reduction of his sentence, and had the motion been granted, the case would clearly be governed by *Matter of Pickering*, because the motion was predicated only on immigration consequences. I see no justification for a different result simply because the motion involved a request for sentence reduction.

The majority makes much of the fact that *Pickering* related to the existence of a "conviction," as defined by section 101(a)(48)(A) of the Act, while the present case relates to the term of a sentence under section 101(a)(48)(B), thereby implying that our rationale in *Pickering* somehow flowed from language that is present in the "conviction" definition but absent from the "term of sentence" definition. That is an untenable interpretation of *Matter of Pickering*. Nothing in the language of section 101(a)(48)(A) addresses convictions that have been vacated solely for immigration purposes, nor does the validity of *Pickering* depend on the existence of the conviction definition, as the majority here implies.[3]

*Matter of Pickering*, like the Immigration Judge's decision in this case, was grounded in the Attorney General's duty to maintain the integrity of the Federal immigration system against flagrant attempts by judges to undercut Congress's purpose by erasing or modifying an alien's conviction solely to achieve an immigration result. Indeed, I note that for like reasons, in the Federal system and perhaps some State systems, it appears to be *illegal* to reduce a sentence for the purpose of affecting immigration consequences. *See United States v. Maung*, 320 F.3d 1305, 1309 (11th Cir. 2003) (citing *United States v.*

---

[3] *Pickering* quoted the definition of a "conviction" but rightly observed that it did not "directly address" the quashing of convictions. *Matter of Pickering*, *supra*, at 622. Our opinion went on to rely on decisions of courts of appeals that likewise did not peg the result to a particular provision of the Act but rather noted that giving effect to convictions vacated solely to achieve an immigration result would thwart the intent of Congress. *See, e.g.*, *Renteria-Gonzalez v. INS*, 322 F.3d 804, 812 (5th Cir. 2002) ("When a court vacates an otherwise final and valid conviction on equitable grounds merely to avoid the immigration-law consequences of the conviction, it usurps Congress's plenary power. . . .").

*Aleskerova*, 300 F.3d 286 (2d Cir. 2002)); *see also United States v. Hernandez*, 325 F.3d 811 (7th Cir. 2003).

Of course, *Pickering* does not depend for its validity on a finding that the vacatur was unlawful. On the contrary, in *Pickering* itself, we assumed that the alien's conviction had been vacated properly for purposes of the law of the rendering jurisdiction (and I would assume here, as well, that the respondent's sentence reduction was valid under California law), but we declined to recognize the purported elimination of the conviction for immigration purposes, because we found that Congress did not contemplate that courts should be able to manipulate immigration consequences through the device of erasing a conviction where the "erasure" was not done for a legal reason, but only to affect the immigration results.

These same considerations logically apply to sentence modifications.[4] In this regard, the following observations in *United States v. Maung*, *supra*, are pertinent:

> Congress has made a deliberate policy judgment about the consequences a criminal conviction should have upon an alien's ability to remain in this country, and it has set the scale accordingly. In setting the scale, Congress has used as measurements the type of crime and the length of sentence imposed. Courts cannot reset the scale. They cannot fudge the result of the measurement Congress has mandated through the use of departures designed to reduce (or enlarge) a sentence for the sole purpose of affecting its immigration consequences. . . .
>
>   The Second Circuit viewed things the same way we do, explaining in the *Aleskerova* case that when a district court departs downward for the purpose of taking a case out of the aggravated felony category, it "disrupt[s] the balance struck by the legislative branch . . . ."

*Id*. at 1309 (quoting *United States v. Aleskerova*, *supra*, at 301) (citations omitted).

---

[4] I realize that, in imposing sentence initially, a court might rely only on immigration consequences to refrain from imposing a particular term of imprisonment, and if the relevant immigration threshold was not reached, we could not say that the alien had been sentenced to the requisite term. But the same could be said of a court that acquitted or refused to convict an alien solely due to the perception that the potential immigration consequences were too severe. Thus, this potential ability of judges intentionally and irreversibly to affect immigration consequences is not a reason for not applying the teachings of *Pickering* in the sentencing milieu. We cannot prevent such untoward *original* outcomes; but the bare possibility of their occurrence (which I do not identify as having been or as likely to become a significant problem) is not a ground for discarding the teachings of *Matter of Pickering* and for failing to recognize an original conviction or sentence that has a disqualifying or adverse effect on an alien, when such has been vacated or amended solely to bar or ameliorate the application of the immigration laws.

For these reasons, I conclude that where a sentence is shown to have been reduced solely for immigration purposes, such reduction should not be recognized and the original sentence should remain in effect for immigration purposes. While no individual provision of the Act instructs how we should treat sentence modifications designed *solely*, as in this case, to ameliorate immigration-law consequences upon an alien, the text, structure, and history of the Act suggest that we should treat such modifications as unavailing.[5]

I believe there is implicit or inherent authority in an adjudicative agency created to interpret a statute to disregard efforts intended solely to undermine the legislative intent and thereby interfere with its very reason for being. Moreover, if a specific delegation of authority to the Board is thought necessary to effect this commonsense result, it is found in the regulations. Thus, 8 C.F.R. § 1003.1(d)(1) (2005) directs in no uncertain terms that the "Board shall resolve the questions before it in a manner that is timely, impartial, and *consistent with the Act*." (Emphasis added.) It should go without saying that construing the Act to give effect to a court's order meant only to avoid an immigration result otherwise dictated by the Act is not a resolution "consistent" with the Act.

In concluding that sentence modifications should be treated differently from outright vacaturs of convictions, the majority relies on *Matter of Song*, 23 I&N Dec. 173 (BIA 2001), declaring that in that case we gave effect to a sentence modification under circumstances similar to those presented here. In *Matter of Song*, the alien was originally sentenced to 1 year in prison for a theft offense but succeeded in getting his sentence reduced to 360 days while the Immigration Judge's decision was pending on appeal. We granted the respondent's motion to terminate proceedings, finding that he was no longer convicted of an aggravated felony under section 101(a)(43)(G) of the Act (categorizing theft offenses as aggravated felonies only if the sentence imposed is at least 1 year).

---

[5] As for history, it is worth noting that Congress experimented for many years with the so-called judicial recommendation against deportation ("JRAD") of former section 241(b) of the Act, 8 U.S.C. § 1251(b) (1988), which allowed Federal and State courts, in imposing sentence or within 30 days thereafter, to determine that an alien convicted of a crime or crimes that rendered the alien deportable should nevertheless not be deported. Although couched in the phraseology of a "recommendation," the statutory "recommendation" was binding. *See Renteria-Gonzalez v. Ashcroft, supra*, at 808 n.2. The JRAD statute was abolished in 1990. *See* Immigration Act of 1990, Pub. L. No. 101-649, §§ 505, 602(b)(1), 104 Stat. 4978, 5050, 5081. Having determined 15 years ago to divest judges of their power, at sentencing, to second-guess and overrule the provisions of the Act relating to the removability of aliens convicted of crimes, it is logical to conclude that Congress would likewise not deem it consistent with later and current versions of the Act to give effect to individual judges' tampering with previously imposed sentences solely to render an alien immune from removal.

The Board's brief opinion stated only (insofar as pertinent here) that it found our prior decision in *Matter of Roldan*, 22 I&N Dec. 512 (BIA 1999), inapplicable because that case dealt with the definition of a "conviction" in section 101(a)(48)(A) of the Act, and not, as in the case at hand, with the definition of the phrase "term of imprisonment" in section 101(a)(48)(B). We did not otherwise purport to deal with a claim that the sentence had been reduced solely for immigration purposes. Nor does the cryptic reference to *Matter of Roldan*, *supra*, imply otherwise, as that decision addressed the quite different issue whether a conviction vacated under a state *rehabilitative* statute remained a "conviction" for immigration purposes.[6] In short, nothing in *Matter of Song*, *supra*, indicates that the Board was confronted with (or resolved) the issue presented here: whether a sentence reduction found to have been made solely to alleviate the immigration consequences of the underlying conviction should be recognized for immigration purposes.

Thus, in refusing to give effect to sentence modifications undertaken solely to ameliorate the immigration consequences of a conviction, we would not undermine the general rule in *Matter of Song*, *supra*, that sentence reductions are ordinarily valid for immigration (as for other) purposes.[7] As we emphasized in *Matter of Pickering*, *supra*, the same is true for court actions vacating convictions, which are generally effective for immigration purposes under *Matter of Rodriguez-Ruiz*, 22 I&N Dec. 1378 (BIA 2000). *See Matter of Pickering, supra*, at 624 (noting that "there is a significant distinction between convictions vacated on the basis of a procedural or substantive defect in the underlying proceedings and those vacated because of post-conviction events, such as rehabilitation or immigration hardships"). I would hold only that the limited exception provided in *Pickering* for court actions vacating convictions undertaken for the *sole purpose* of affecting immigration results applies also in the sphere of sentence modifications.

---

[6] Indeed, it is not apparent how *Matter of Roldan* was even relevant to the issue before the Board in *Matter of Song*, since reducing a sentence by a few days, even if done for other than penologically sound reasons or to affect an immigration result, is not effected pursuant to a rehabilitative program or statute and is not properly characterized as serving rehabilitative ends.

[7] There are, of course, many valid nonimmigration-related reasons for reducing a sentence, such as to correct an illegal sentence, to recognize a defendant's post-sentence assistance to law enforcement or other meritorious behavior, or to harmonize a sentence with that imposed on other similarly situated offenders, and nothing in this opinion is to be taken as indicating my view that such sentencing actions would be without effect for immigration purposes.

## III. CONCLUSION

It is unfortunate that the majority regard the Board as impotent to preserve the immigration consequences that flow from an alien's conviction and sentence against the subsequent efforts of State judges when they manipulate a previously imposed sentence at the behest of an alien *solely* to ameliorate or eliminate such adverse immigration consequences. While such judges undoubtedly act with benign intentions and in the belief that they are doing justice, in fact, by substituting their judgment for the judgment of Congress as to whether an alien should be deported or rendered ineligible for certain relief from deportation, their actions detract from the evenhanded application of the law and thereby arguably create injustice. As the Attorney General's "delegates," *see* 8 C.F.R. § 1003.1(a)(1), enjoined to decide cases consistent with the Act, we fail to fulfill our responsibility by honoring such judicial orders that thwart the clear intention of Congress.

The respondent does not dispute that the offense of receipt of stolen property in violation of section 496(a) of the California Penal Code constitutes a "receipt of stolen property" offense within the meaning of section 101(a)(43)(G) of the Act. *Matter of Bahta*, 22 I&N Dec. 1381, 1391 (BIA 2000). Thus, because I conclude that the respondent's conviction for that offense resulted in a sentence to a term of imprisonment of at least 1 year, I agree with the Immigration Judge that he is deportable (and ineligible for relief) as an alien convicted of an aggravated felony.