*Howard Duncan v. State of Maryland*, No. 2519, September Term, 2016, Opinion by Thieme, J.

**CRIMINAL LAW – WRIT OF ERROR CORAM NOBIS – INEFFECTIVE ASSISTANCE OF COUNSEL – COUNSEL'S OBLIGATIONS UNDER *PADILLA v. KENTUCKY*, 559 U.S. 356 (2010), AND ITS PROGENY, REGARDING IMMIGRATION CONSEQUENCES OF CRIMINAL SENTENCES ORDERED DURING VIOLATION OF PROBATION PROCEEDINGS:** Appellant claimed that he was denied his right to effective assistance of counsel in connection with his violation of probation proceedings when his lawyer failed to apprise the court of the immigration consequences that would result if the court were to sentence appellant to certain lengths of incarceration upon finding appellant in violation of his probation. Appellant failed to show deficient performance on the part of his attorney because appellant's adverse immigration consequences arose when he was originally sentenced and there was nothing the violation of probation court could have done to ameliorate those consequences. Accordingly, appellant failed to show that he was denied his right to effective assistance of counsel.

**CRIMINAL LAW – VIOLATION OF PROBATION**: When a court imposes a sentence and then suspends execution of all or part of that sentence in favor of probation, and later strikes the probation and directs execution of all or part of the previously suspended part of the sentence, the court does not, at that time re-impose all or any part of the sentence. The full sentence has already been imposed and does not need any re-imposition. The effect of the court's action is simply to lift the previously ordered suspension and direct execution of the now unsuspended part. *Moats v. Scott*, 358 Md. 593, 596-97 (2000).

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2519

September Term, 2016

_____

HOWARD DUNCAN

v.

STATE OF MARYLAND

_____

Eyler, Deborah S.,
Leahy,
Thieme, Raymond G., Jr.
   (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Thieme, J.
_____

Filed:  April 4, 2018

This appeal arises from the denial of a petition for a writ of error coram nobis filed in the Circuit Court for Montgomery County by appellant, Howard Duncan, in which he claimed that his right to effective assistance of counsel was denied at a violation of probation (VOP) hearing. Appellant presents us with the following question:

Did the court err in denying appellant's petition for writ of error coram nobis?

For the reasons that follow, we answer that question in the negative and affirm the judgment of the circuit court.

## BACKGROUND

*Guilty Plea.*

On October 22, 2008, pursuant to a binding agreement, appellant pleaded guilty, in the Circuit Court for Montgomery County, to two counts of robbery with a dangerous weapon.[1] Under the plea agreement, the court bound itself to impose an overall sentence not exceeding twenty years' imprisonment. Additionally, the court bound itself to impose a sentence of executed incarceration not to exceed eighteen months. On October 31, 2008, consistent with the plea agreement, the court imposed a 10-year term of imprisonment, with all but 18 months suspended, for one robbery conviction, and a concurrent 364-day term of imprisonment for the other robbery conviction. The court also imposed two years of supervised probation.

---

[1] Appellant turned seventeen years old days before he pleaded guilty.

*Violation of Probation.*

On August 11, 2009, appellant was released from incarceration and began his probation. On November 23, 2010, appellant was found to have been in violation of the terms of his probation after he admitted that he been convicted of a number of other crimes that occurred while he was serving his probation, including, theft, possession of a firearm by a minor, and making a false statement to police. Thereafter, the court directed the execution of six years of the eight and one-half year term of imprisonment it had previously suspended.

*Petition for a Writ of Error Coram Nobis.*

In 2016, appellant, relying on *Padilla v. Kentucky*, 559 U.S. 356 (2010)[2] and its progeny, filed a petition for a writ of error coram nobis contending that he was deprived of his right to effective assistance of counsel during his violation of probation proceeding when his counsel (1) failed to inform him of the immigration consequences of admitting that he had violated his probation, and (2) failed to present mitigation evidence to the court related to the immigration consequences of appellant's violation of his probation.

Appellant claimed that, had he known of the immigration consequences of admitting he was in violation of his probation, he would not have admitted violating his probation.[3]

---

[2] In *Padilla,* the Supreme Court held that counsel must inform a client whether a guilty plea carries a risk of deportation. 559 U.S. at 374.

[3] We find that appellant has abandoned this argument. In his appellate briefs before this Court, he offers no analysis or support for the contention, and in fact, the contention is barely even mentioned.

(continued)

In addition, he claimed that, had the trial court been aware of the immigration consequences of the execution of the previously suspended sentence, there was a significant possibility that the VOP court might have chosen to sentence appellant to a lesser period of incarceration which would have "preserved his eligibility for immigration relief[.]" According to appellant, if the VOP court had ordered the execution of less than five years of the previously suspended sentence, that would have made appellant's adverse immigration consequences less severe, and, if the VOP court had ordered the execution of less than one year of the previously suspended sentence, that would have potentially eliminated any adverse immigration consequences.

Appellant's argument is premised on certain portions of federal immigration law which reveal that the duration of appellant's sentence(s) for robbery was relevant to, if not determinative of, appellant's removability from this country. The relevant portions of the Immigration and Nationality Act (INA) provide that the Attorney General of the United States has the power to remove an alien from the United States who has been convicted of an "aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii); 8 U.S.C. § 1231. The term

In any event, even if we found that appellant had not abandoned the contention, we would find it utterly lacking merit because appellant cannot possibly establish prejudice, i.e., that there is a significant or substantial possibility that appellant would have refused to admit that he was in violation of the terms of his probation, and instead, insisted on having a contested hearing on the matter. This is so because, even if appellant were 100% successful in pursuing this strategy by successfully persuading the VOP court that he was not in violation of the terms of his probation, his original sentence of ten years imprisonment with all but 18 months suspended, would remain unchanged and would still cause appellant the exact same adverse immigration consequences that he had then and currently has now.

(continued)

3

"aggravated felony" is defined[4] to include "a crime of violence … for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101 (a)(43)(F). A "crime of violence" is defined by 18 U.S.C § 16 as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another," or "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."[5] The phrase "term of imprisonment" "is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part." 8 U.S.C. § 1101(a)(48)(B).

In addition, under 8 U.S.C. § 1231(b)(3)(A), if the Attorney General determines that the alien's "life or freedom would be threatened [by being deported to] that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion," then the Attorney General may withhold deportation. However, the Attorney General lacks the authority to withhold deportation if the alien is convicted of a

---

[4] An "aggravated felony" also includes murder, rape, sexual abuse of a minor, certain acts of money laundering, certain firearms and explosive crimes, illicit trafficking in a controlled substance, theft and burglary for which the sentence was greater than one year, child pornography, certain prostitutions crimes, sabotage and treason, fraud involving a loss of greater than $10,000, and other offenses. 8 U.S.C. § 1101 (a)(43).

[5] The parties do not seem to dispute that robbery classifies as a violent crime under 18 U.S.C. § 16. Given that, in Maryland, one of the essential elements of the crime of robbery is the use of, or threatened use of, force, we agree that robbery clearly qualifies as a crime of violence under 18 U.S.C. § 16.

"particularly serious crime." A "particularly serious crime" is defined as an "aggravated felony" for which an alien has a term of imprisonment of at least 5 years. 8 U.S.C. § 1231 (b)(3)(B)(iv).

Thus, an alien who is convicted of robbery and receives a sentence in excess of one year's imprisonment, like appellant, is subject to removal from this country regardless of how much of that sentence is suspended. Moreover, if an alien is sentenced to more than five years' imprisonment for robbery (regardless of how much of that sentence is suspended), like appellant, then the Attorney General lacks the authority to withhold deportation under 8 U.S.C. § 1231(b)(3)(A).

Appellant argued that, based on the foregoing, the VOP court had two options at its disposal which could have ameliorated appellant's negative immigration consequences. The VOP court could have either sentenced appellant to less than one year's imprisonment, which would have had the effect of removing the "aggravated felony" status of appellant's robbery conviction, or sentenced appellant to less than five years' imprisonment, which would have had the effect of removing the "particularly serious crime" status of appellant's robbery conviction, which would have, in turn permitted the Attorney General to withhold deportation.

Appellant claims that his attorney's failure to address these immigration related concerns before, or during, the VOP hearing amounted to a deprivation of his right to effective assistance of counsel. According to *Strickland v. Washington*, 466 U.S. 668 (1984), in order for a defendant to prevail on a claim of ineffective assistance of counsel,

5

the defendant must prove (1) that his counsel made a serious attorney error, and (2) that the error caused prejudice. *Id*. at 694.

*The Hearing on the Petition for a Writ of Error Coram Nobis.*

On December 8, 2016, the court held a hearing on appellant's petition.[6] During that hearing, the court said that, with respect to appellant's ineffective assistance of counsel claims, "the only conceivable prejudice is[,] had arguments been presented to me about the impact of a sentence of over five years as opposed to under five years, would that have affected the sentence that I would have imposed[.]" The court then said that "there is … at least a significant possibility that I might have been swayed" to impose a sentence under five years. The court also said that it would not have considered a sentence of under one year for the violation of probation. The court then reserved on the issue of whether, under the circumstances of this case, counsel was required to inform appellant and/or the court of the immigration consequences of the sentencing on the VOP, and concomitantly, whether VOP counsel made a serious attorney error in failing to advise appellant and/or the court of such consequences.

*The Order Denying the Petition for a Writ of Error Coram Nobis.*

On January 25, 2017, after receiving supplemental briefing from the parties, the court issued an Opinion and Order denying appellant's petition. The court focused its analysis on whether the original ten-year sentence with all but 18 months suspended, or the six-year VOP sentence, was the operative sentence for immigration consequence purposes.

---

[6] The judge who presided over appellant's guilty plea, and VOP proceedings, the Honorable Michael D. Mason, also presided over appellant's coram nobis proceedings.

6

The court found that the federal government, when considering appellant's removability, would consider appellant as having received a ten-year sentence because that was the sentence imposed in 2008. The court ruled, in pertinent part, that:

> The [c]ourt shall focus on the question of whether the 6 year sentence imposed for the violation [of probation] is the operative sentence for purposes of the INS because the resolution of that issue is dispositive of [appellant's] request.
>
> Citing to *In re: Song*, 23 I.&N. Dec., 173 (2001) and *In re: Cota-Vargas*, 23 I.&N. Dec., 849 (2005), [appellant] argues that the sentence of 6 years imposed for the violation of probation is the controlling sentence for immigration purposes. The original sentence imposed is a nullity for immigration purposes. As the State points out in their Reply, neither of these cases support that proposition. In both cases, the original sentences were struck on reconsideration and new sentences were imposed *nunc pro tunc*. Under those circumstances, the INS considered the new sentences only and treated the original sentences as a nullity.
>
> What occurred here is entirely different. Here the [c]ourt originally imposed a sentence of 10 years, suspend all but 18 months, and placed [appellant] on two years of supervised probation. [Appellant] after serving 18 months was free in the community on probation. Thereafter, the [c]ourt found he violated the probation and of the remaining 8 ½ years backup time that he faced, imposed an additional 6 years for [appellant] to serve on the original sentence.
>
> Under these circumstances, the [c]ourt finds that INS would not consider the original sentence of 10 years a nullity. Instead they would view the [appellant] as having received a sentence of 10 years, 7 ½ of which he ultimately had to serve. For that reason, there was no adverse consequence for immigration purposes to be suffered as a result of the admission to the violation. The adverse consequence had already been suffered as a result of the original 10 year sentence. Therefore, [VOP counsel] was not ineffective in failing to advise [appellant] of any adverse immigration consequences as a result of admitting the violation. For the same reason, the [c]ourt finds that [VOP counsel] was not ineffective for failing to argue to the [c]ourt that if the [c]ourt imposed a sentence of less than 5 years on the violation, [appellant] could argue that he should not be deported. Such an argument if made, would be an incorrect statement of the law.

7

On appeal, appellant claims that, when the coram nobis court wrote in its opinion and order, "[t]herefore, [VOP counsel] was not ineffective in failing to advise [appellant] of any adverse immigration consequences as a result of admitting the violation," the coram nobis court "found as a matter of fact that [a]ppellant's attorney at the probation revocation hearing did not discuss the immigration consequences of [a]ppellant's plea." That failure to so advise, according to appellant, amounted to a serious attorney error under the teachings of *Padilla*, *supra*, and its progeny.

According to appellant, because the coram nobis court found, as a fact, that counsel did not discuss the immigration consequences with appellant, which was a serious attorney error, and because the court had already announced its finding of prejudice[7] during the hearing on the coram nobis petition, the court had effectively found both prongs of the *Strickland*, *supra*, test were satisfied, and therefore it erred in not granting relief. In appellant's view, the coram nobis court wrongly believed that appellant also had to show that any "lesser sentence [imposed by the VOP court] would have affected his deportation status," which appellant did not do.

In the alternative, appellant argues that the coram nobis court was legally incorrect in finding that the operative sentence for immigration purposes was the original sentence because, according to appellant, under federal law the determinative sentence is the VOP sentence. Citing federal cases, including *Enwonwu v. Gonzales,* 438 F.3d 22, 35 (1st Cir.

---

[7] While it is immaterial to our holding, we agree with appellant on this point.

8

2006), and *United States v. Tejeda-Perez*, 199 F.3d 981, 982-83 (8th Cir. 1999), appellant acknowledges that the suspended portion of a period of incarceration is included in the calculation of the length of a sentence for immigration purposes.

Citing several cases, including *United States v. Huerta-Moran*, 352 F.3d 766 (2d. Cir. 2003), *United State v. Compres-Paulino*, 393 F.3d 116 (2d Cir. 2004), *United States v. Hidalgo-Macias*, 300 F.3d 281 (2d. Cir. 2002), *United States v. Woods*, 127 F.3d 990, 992 (11ᵗʰ Cir. 1997), and *United States v. Compian-Torres*, 320 F.3d 514, 516-17 (5th Cir. 2003), appellant also acknowledges that a conviction for which the sentence originally would not have adverse immigration consequences can, nonetheless, become a conviction with adverse immigration consequences upon a finding of a violation of probation, because "any punishment assessed for a violation of probation is actually imposed for the underlying conviction." *Huerta-Moran*, 352 F.3d at 770.

Appellant points out that, under 18 U.S.C. § 3565(a)(2), upon finding that a defendant violated the conditions of his probation the court may "revoke the sentence of probation and *resentence* the defendant under subchapter A." (emphasis added by appellant). Citing *Coley v. State*, 74 Md. App. 151, 156 (1988), *McDonald v. State*, 314 Md. 271, 285 (1988), *Brown v. State*, 62 Md. App. 74, 77, *cert. denied*, 303 Md. 42 (1985), *Pitts v. State*, 155 Md. App. 346 (2004), and *Sellman v. State*, 47 Md. App. 510, 512-13 (1981), appellant claims that Maryland law on sentencing after a finding of a violation of probation is similar to how the federal government treats probation revocation. According to appellant, those preceding Maryland cases all contain language supporting the

9

proposition that, upon a finding of a violation of probation, a defendant's sentence is "imposed" and/or "re-imposed" and/or a "resentencing" occurs.

Appellant points to federal authority suggesting that a conviction for which the sentence originally had adverse immigration consequences can, nonetheless, become a conviction without adverse immigration consequences upon a downward modification of sentence. *See Sandoval v. I.N.S.*, 240 F.3d 577 (7th Cir. 2001), *In re Min Song*, 23 I.&N. Dec. 173 (B.I.A. 2001), *Matter of Martin*, 18 I.&N. Dec. 226 (B.I.A. 1982), *In re Oscar Cota-Vargas*, 23 I.&N. Dec. 849 (B.I.A. 2005), *United States v. Landeros-Arreola*, 260 F.3d 407 (5th Cir. 2001).  Thus, appellant claims that, because a VOP sentencing is a re-sentencing under Maryland law, and because immigration authorities, when evaluating a defendant's sentence for immigration purposes, will look to the new and reduced sentence after a resentencing, that, had appellant received a sentence under five years upon violating his probation, his immigration consequences would have been less severe.  Therefore, according to appellant, had counsel for appellant argued in mitigation for imposition of a sentence of under five years, or under one year, the court could have "re-imposed" a sentence of under five years' incarceration which would have ameliorated appellant's immigration consequences.

*The State's Contentions on Appeal.*

As an initial matter, the State does not accept the appellant's assertion that "the [coram nobis] court found as a matter of fact that [a]ppellant's attorney at the probation revocation hearing did not discuss the immigration consequences of [a]ppellant's plea." The State argues that, when the coram nobis court said "[t]herefore, [appellant's counsel

at the violation of probation hearing] was not ineffective in failing to advise [appellant] of any adverse immigration consequences as a result of admitting the violation," the court was merely assuming, for argument's sake, that counsel did not advise appellant about the potential adverse immigration consequences associated with violating probation.[8] Moreover, the State claims that, appellant's advice, or lack thereof, was immaterial to the coram nobis court's legal conclusion that appellant's original ten-year sentence was the determinative sentence for immigration purposes.

The State agrees with the coram nobis court that the operative sentence for ascertaining appellant's immigration consequences flowing from his criminal convictions was the original ten-year sentence, with all but 18 months suspended, imposed on October 31, 2008, after appellant pleaded guilty, and before he violated the terms of his probation. As support for this position, the State directs our attention to 8 U.S.C. § 1101 which provides, *inter alia*, and as relevant here, the definition of an "aggravated felony" and a "term of imprisonment." As noted above, the term "aggravated felony" is defined to include "a crime of violence … for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101 (a)(43)(F). Moreover, according to 8 U.S.C. § 1101(a)(48)(B), the phrase "term of imprisonment …is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part." The State cites several cases as support for its positions that, "for purposes of that designation as an aggravated felon, it is

---

[8] While it is immaterial to our holding, we agree with the State on this point.

11

immaterial whether the sentence is suspended," and that a sentence imposed upon revocation of probation is part of the "actual sentence imposed" for the original offense. *See Dawkins v. Holder*, 762 F.3d 247, 249-50 (2d Cir. 2014); *United States v. Echavarria-Escobar*, 270 F.3d 1265, 1270 (9th Cir. 2001); *United States v. Compian-Torres*, 320 F.3d 514 (5th Cir. 2003); *United States v. Yanez-Huerta*, 207 F.3d 746 (5th Cir. 2000); *United States v. Tejada-Perez*, 199 F.3d 981, 982 (8th Cir. 1999); *United States v. Cordoza-Estrada*, 385 F.3d 56 (1st Cir. 2004); *United States v. Graham*, 169 F.3d 787 (3rd. Cir. 1999).

The State contends that Maryland's procedure upon revocation of probation mirrors the federal procedure of treating the sentence upon revocation of probation as part of the sentence imposed for the original offense. The State refers us to *Gibson v. State*, 328 Md. 687 (1992) for the proposition that revocation of probation "is not a second punishment added upon the original sentence; it represents, rather, the withdrawal of favorable treatment previously accorded the defendant." *Id.* at 690.

The State asserts that adopting appellant's argument would have the perverse result of rewarding a defendant for violating his probation.

Next, the State distinguishes the cases cited by appellant that suggest that a conviction for which the sentence originally had adverse immigration consequences can, nonetheless, become a conviction without adverse immigration consequences upon a downward modification of sentence. The State claims that none of the cases relied upon

12

by appellant involved a revocation of probation.[9]  The State points out that *In re Min Song*, 23 I.&N. Dec. 173 (B.I.A. 2001) and *In re Oscar Cota-Vargas*, 23 I.&N. Dec. 849 (B.I.A. 2005) both dealt with *nunc pro tunc* orders entered for the express purpose of nullifying the original sentence in order to avoid adverse immigration consequences.  According to the State, in *Matter of Martin*, 18 I.&N. Dec. 226 (B.I.A. 1982), the State court corrected an illegal sentence, and the immigration court found that the "new, reduced sentence stands as the only valid and lawful sentence imposed upon the defendant." *Id*. at 227.  The State distinguished *Sandoval v. I.N.S.*, 240 F.3d 577 (7th Cir. 2001) on the basis that that case involved a conviction that was vacated.

In any event, the State argues that the rationale supporting the aforementioned cases cited by appellant has been called into question by the federal courts.  Specifically the State directs us to *Sharma v. Taylor*, 50 F.Supp.3d 749 (E.D. Va. 2014) where that court noted:

> It is worth noting that *Cota-Vargas* and *Song*[10] are BIA cases which held that it was unnecessary to inquire into the reasons the state court issued the relevant *nunc pro tunc* relief. Yet, there is contrary caselaw on this point. Courts of appeal are nearly unanimous in holding that the availability of relief from adverse immigration actions such as removal depends on the reasons for a state court's action, including whether an order vacating an alien's conviction was issued "for reasons solely related to rehabilitation or to avoid adverse immigration hardships" or "on the basis of a procedural or substantive defect in the underlying criminal proceedings." *Pickering v. Gonzales*, 465 F.3d 263, 266 (6th Cir.2006); s*ee also Murillo–Espinoza v.*

---

[9] The State did not address *United States v. Landeros-Arreola*, 260 F.3d 407 (5th Cir. 2001) which was cited by appellant.  Nevertheless, had the State addressed it, it likely would have noted that that case did not deal with a violation of probation either.  Rather, it dealt with a defendant whose sentence was modified downward upon successfully completing boot camp. *Id*. at 409

[10] As noted above, both *In re Oscar Cota-Vargas*, 23 I.&N. Dec 849 (B.I.A. 2005) and *In re Min Song*, 23 I.&N. Dec. 173 (B.I.A. 2001) are relied upon by appellant.

*INS*, 261 F.3d 771 (9th Cir.2001); *Sandoval v. INS*, 240 F.3d 577 (7th Cir.2001); *Herrera–Inirio v. INS*, 208 F.3d 299 (1st Cir.2000).

*Id*. at 759 n.6.

Next, the State contends that, given that the 10-year sentence originally imposed was the operative sentence for immigration purposes, there was nothing that VOP counsel could have done during the VOP proceedings to have affected appellant's adverse immigration consequences. From that standpoint, the State contends that appellant established neither a serious attorney error nor prejudice within the meaning of *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny.

The State also argues that, according to the Court of Appeals interpretation, in *State v. Sanmartin Prado*, 448 Md. 664 (2016), of the holding in *Padilla v. Kentucky*, 559 U.S. 356 (2010), trial counsel here did not perform deficiently because the immigration argument raised in the instant case is complex, and criminal defense lawyers are not required to be experts in immigration law. The State relies on *Sanmartin Prado* where the Court of Appeals noted that the Supreme Court, in *Padilla*

> acknowledged that the intricacies of immigration law are not necessarily something with which defense counsel are familiar or skilled. And, to that end, rather than holding that defense counsel must become experts in immigration law for purposes of advising noncitizen clients of the risks of deportation, in *Padilla* … the Supreme Court essentially extended the principle of *Strickland* that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms."

448 Md. at 712.

The State asserts that the coram nobis court did not make a finding that appellant established prejudice within the meaning of *Strickland*, when the coram nobis court said

during the hearing on appellant's petition that "there is … at least a significant possibility that I might have been swayed" to impose a sentence under five years. According to the State, the coram nobis court merely "assumed for the sake of argument that it 'might have been swayed' to consider a sentence of under five years had that argument been presented to [it]." Nevertheless, according to the State, the coram nobis court ultimately found, in its written opinion and order, that such a hypothetical argument was beside the point because, in the words of the coram nobis court, the "adverse consequence had already been suffered as a result of the original 10-year sentence." Therefore, the coram nobis court continued, "[t]he only prejudice[] suffered by [appellant] for immigration purposes is the prejudice suffered by virtue of the original plea and sentence imposed."

## DISCUSSION

*Coram Nobis Generally.*

A writ of error coram nobis is an extraordinary remedy justified only when circumstances compel such an action to achieve justice. Coram nobis is available to raise fundamental errors when attempting to show that a criminal conviction was invalid under the circumstance where no other remedy is presently available, and where there were sound reasons for the failure to seek relief earlier. *State v. Rich*, 454 Md. 448, 461 (2017), *Skok v. State*, 361 Md. 52, 72-73 (2000); *see also State v. Smith*, 443 Md. 572, 597 (2015). As observed in *Rich,* the Court of Appeals has outlined five requirements for obtaining coram nobis relief.

> First, "the grounds for challenging the criminal conviction must be of a constitutional, jurisdictional or fundamental character." *Skok*, 361 Md. at 78 (citing *United States v. Morgan*, 346 U.S. 502, 512 (1954)). Second, "a

15

presumption of regularity attaches to the criminal case, and the burden of proof is on the coram nobis petitioner." *Id.* (citing *Morgan*, 346 U.S. at 512). Third, "the coram nobis petitioner must be suffering or facing significant collateral consequences from the conviction." *Id.* at 79. Fourth, "[b]asic principles of waiver are applicable to issues raised in coram nobis proceedings. Similarly, where an issue has been finally litigated in a prior proceeding, and there are no intervening changes in the applicable law or controlling case law, the issue may not be relitigated in a coram nobis action." *Id.* (citation omitted) (citing *Morgan*, 346 U.S. at 512). Fifth, "one is not entitled to challenge a criminal conviction by a coram nobis proceeding if another statutory or common law remedy is then available." *Id.* at 80.

*Rich*, 454 Md. at 462.

The parties do not contest that coram nobis relief is available to appellant. While we are not bound to accept such an apparent concession, s*ee, e.g., Imbesi v. Carpenter Realty Corp.*, 357 Md. 375, 380 n.3 (2000), we will accept it in this case. As a result, we proceed to the underlying merits of appellant's claim of ineffective assistance of counsel.

### Standard of Review

Because of the "extraordinary" nature of relief under coram nobis, appellate courts review a coram nobis court's decision to grant or deny a petition for a writ of error coram nobis for abuse of discretion. *Rich*, 454 Md. at 470–71. *Rich* also explained that, "in determining whether the ultimate disposition of the coram nobis court constitutes an abuse of discretion, appellate courts should not disturb the coram nobis court's factual findings unless they are clearly erroneous, while legal determinations shall be reviewed de novo." *Id.* at 471.

### Right to Effective Assistance of Counsel.

Both the Sixth Amendment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, and Article 21 of the Maryland Declaration of

16

Rights guarantee the right to effective assistance of trial counsel. *See Coleman v. State*, 434 Md. 320, 334 (2013); *see also* U.S. Const. amend. VI, XIV; Md. Const. Decl. of Rts. art. 21. Under *Strickland v. Washington*, 466 U.S. 668 (1984), ineffective assistance of counsel claims involve a two-prong analysis. *See Harris v. State*, 303 Md. 685 (1985). To establish ineffective assistance of counsel, a petitioner must demonstrate (1) that, under the "performance prong," counsel's performance was deficient, i.e., counsel committed serious attorney error, and (2) that, under the "prejudice prong," counsel's deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687.

To meet the requirements under the "performance prong" and demonstrate "serious attorney error," a petitioner must show that the acts or omissions of counsel were the result of unreasonable professional judgment and that counsel's performance fell below an objective standard of reasonableness considering prevailing professional norms. *Cirincione v. State*, 119 Md. App. 471, 484 (1998). In other words, the "performance component" requires a "show[ing] that counsel's performance was deficient," and "counsel made errors so serious that 'counsel' was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Under the "performance prong," if counsel's acts were reasonable trial strategy or tactic, counsel's performance will not be deemed ineffective. *Strickland*, 466 U.S. at 687-89; see also *Oken v. State*, 343 Md. 256, 283 (1996). To demonstrate prejudice a petitioner must show a "substantial or significant possibility" that, but for the serious attorney error, the result would have been different. *Bowers v. State*, 320 Md. 416, 426 (1990).

In *Padilla, supra,* the Supreme Court of the United States held that, pursuant to the

17

Sixth Amendment right to counsel, "counsel must inform [his or] her client whether his [or her] plea carries a risk of deportation[,]" 559 U.S. at 374, and that, "when the deportation consequence is truly clear, ... the duty to give correct advice is equally clear." *Id.* at 369. *See State v. Sanmartin Prado*, 448 Md. 664, 665-66 (2016), *cert. denied*, 137 S. Ct. 1590 (2017). *Padilla* noted that:

> Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward … a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

*Id.* at 369 (footnote omitted).

As noted in *Strickland*, "both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." 466 U.S. at 698. "Thus, in our independent examination of the case, we 're-weigh the facts as accepted in order to determine the ultimate mixed question of law and fact, namely, was there a violation of a constitutional right as claimed.'" *Coleman*, 434 Md. at 331 (quoting *Harris v. State*, 303 Md. 685, 698 (1985)). In *Harris*, the Court of Appeals observed that:

> When a claim is based upon a violation of a constitutional right it is our obligation to make an independent constitutional appraisal from the entire record. But this Court is not a finder of facts; we do not judge the credibility of the witnesses nor do we initially weigh the evidence to determine the facts underlying the constitutional claim. It is the function of the trial court to ascertain the circumstances on which the constitutional claim is based. So, in making our independent appraisal, we accept the findings of the trial judge as to what are the underlying facts unless he is clearly in error. We then re-weigh

the facts as accepted in order to determine the ultimate mixed question of law and fact, namely, was there a violation of a constitutional right as claimed.

*Id*. at 697-98 (citations omitted).

By statute, under the Public Defender Act, a criminal defendant has a right to counsel during violation of probation proceedings. Md. Code Ann., Crim. Proc. § 16-204 (formerly Code (1957, 1997 Repl.Vol.), Art. 27A. Section 4(b)). *State v. Flansburg*, 345 Md. 694, 699 (1997). That means that a criminal defendant has the right to effective assistance of counsel during violation of probation proceedings because, "[r]egardless of the source, the right to counsel means the right to the effective assistance of counsel." *Id*. at 703.

*The correctness of the coram nobis court's ruling.*

At issue here is the correctness of the coram nobis court's ruling that VOP counsel was not ineffective in failing to advise the court of any adverse immigration consequences in connection with the violation of probation proceedings because "[t]he adverse consequence had already been suffered as a result of the original 10-year sentence." We are persuaded that the coram nobis court was correct.

As noted above, appellant's argument is that, because it is clear that a conviction for which the sentence originally would not have adverse immigration consequences can, nonetheless, become a conviction with adverse immigration consequences upon a finding of a violation of probation, that the obverse must be true, i.e., that a conviction for which the sentence originally had adverse immigration consequences can, nonetheless, become a

19

conviction without adverse immigration consequences upon a finding of a violation of probation. For a number of reasons, we are not persuaded this is so.

First, we agree with the State that it seems unlikely that federal law would adopt a position which would have the result of rewarding a defendant solely for violating his probation. Such a result seems untenable.

Second, a major necessary premise of appellant's argument is that, upon being found to have been in violation of probation, a defendant's sentence is "imposed" or "re-imposed." As noted previously, appellant cites a number of Maryland cases for this proposition. As the Court of Appeals explained in no uncertain terms in *Moats v. Scott*, 358 Md. 593 (2000), upon revocation of probation, a sentence is not "imposed" or "re-imposed." *Moats* explained that:

> One of the problems that lurks in this case … arises from the supposition that, when a court imposes a sentence of imprisonment, immediately suspends execution of all or part of that sentence in favor of probation, and later revokes the probation and orders the defendant incarcerated, the court has, at that time, "reimposed" the prison sentence. We have contributed to that false notion by occasionally using the term "reimpose" when describing the effect of the revocation … [T]hat is not, in fact, what occurs.

*Id*. at 594-95 (internal citations omitted). The Court continued:

> We take this opportunity once again to confirm what we said in *Coleman* [*v. State*, 231 Md. 220 (1963)] and clarify that, when a court imposes a sentence and then … suspends execution of all or part of that sentence in favor of probation, and later strikes the probation and directs execution of all or part of the previously suspended part of the sentence, *the court does not, at that time reimpose all or any part of the sentence. The full sentence has already been imposed and does not need any reimposition.* The effect of the court's action is simply to lift the previously ordered suspension and direct execution of the now unsuspended part.

*Id.* 596–97 (emphasis added). Hence the authority relied on by appellant has been disapproved by a subsequent decision of the Court of Appeals and carries, therefore, no weight. With appellant's premise removed, his argument collapses under its own weight. It is apparent to us that, once appellant received his 10-year partially suspended sentence, the immigration related consequences became operative. While we make no comment about whatever other possible methods appellant may, or may not, have had to ameliorate his immigration situation, that relief was not available to him during the violation of probation proceedings. Therefore, any lack of advice about immigration consequences was irrelevant to those proceedings.

Third, we agree with the State that the Board of Immigration Appeals cases cited by appellant suggesting that a conviction, which originally had adverse immigration consequences because of the length of the sentence, can, nonetheless, become a conviction without adverse immigration consequences upon a downward modification of sentence, (1) are distinguishable from this case, and (2) are in tension with decisions from several federal circuit courts of appeal. As the State correctly pointed out, none of the cases relied upon by appellant involved a revocation of probation.

*In re Min Song*, 23 I.&N. Dec. 173 (B.I.A. 2001) and *In re Oscar Cota-Vargas*, 23 I.&N. Dec. 849 (B.I.A. 2005) both dealt with *nunc pro tunc* orders entered for the express purpose of nullifying the original sentence in order to avoid adverse immigration consequences. In *Matter of Martin*, 18 I.&N. Dec. 226 (B.I.A. 1982), the State court corrected an illegal sentence and imposed a new sentence. *Id.* at 227. *Sandoval v. I.N.S.*, 240 F.3d 577 (7th Cir. 2001) involved a vacated conviction.

21

In *Pickering v. Gonzales*, 465 F.3d 263 (6th Cir. 2006), the court explained that a "conviction vacated for rehabilitative or immigration reasons remains valid for immigration purposes, while one vacated because of procedural or substantive infirmities does not." *Id*. at 266. *Sharma v. Taylor*, 50 F.Supp.3d 749 (E.D. Va. 2014) suggested that such a rule also applied to a reduction of sentence "for reasons solely related to rehabilitation or to avoid adverse immigration hardships." That court noted

> … that *Cota–Vargas* and *Song* are BIA cases which held that it was unnecessary to inquire into the reasons the state court issued the relevant *nunc pro tunc* relief. Yet, there is contrary caselaw on this point. Courts of appeal are nearly unanimous in holding that the availability of relief from adverse immigration actions such as removal depends on the reasons for a state court's action, including whether an order vacating an alien's conviction was issued for reasons solely related to rehabilitation or to avoid adverse immigration hardships or "on the basis of a procedural or substantive defect in the underlying criminal proceedings." *Pickering v. Gonzales*, 465 F.3d 263, 266 (6th Cir.2006); s*ee also Murillo–Espinoza v. INS*, 261 F.3d 771 (9th Cir.2001); *Sandoval v. INS*, 240 F.3d 577 (7th Cir.2001); *Herrera–Inirio v. INS*, 208 F.3d 299 (1st Cir.2000).

*Id*. at 759 n.6.

In short, the sentence appellant received after he violated his probation was immaterial because he suffered his adverse immigration consequences in 2008 after he pleaded guilty and was sentenced to ten years' incarceration. There was nothing that the VOP court could have done in 2010 that would have changed appellant's immigration consequences. As a result, he was not denied the effective assistance of counsel during the VOP proceedings.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. APPELLANT TO PAY COSTS.**

22